STATE of Wisconsin, Plaintiff-Respondent,

v.

Paulan G. STEFANOVIC, Defendant-Appellant.

Court of Appeals

*No. 97–1791–CR. Submitted on briefs October 8, 1997.—Decided November 26, 1997.*

(Also reported in 572 N.W.2d 140.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Margaret A. Maroney* of the Office of the State Public Defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Adam Y. Gerol*, assistant district attorney.

Before Snyder, P.J., Brown and Nettesheim, JJ.,

NETTESHEIM, J.   This is Paulan G. Stefanovic's second appeal in this case. In her first appeal, we summarily affirmed Stefanovic's conviction for carrying a concealed weapon when we approved her appellate attorney's no merit report. That appeal sowed the seeds for this appeal because while the prior appeal was pending, Stefanovic served the one-year period of probation which the trial court had imposed, and she was discharged from probation by the department of corrections.

The issue on this appeal is whether Stefanovic can now be required to serve the thirty-day jail term which the trial court had imposed as a condition of probation but stayed pending the prior appeal. Despite the department's discharge of Stefanovic from probation, the trial court ruled that it had not lost jurisdiction over Stefanovic and ordered her to serve the jail term. Stefanovic appeals.

We hold that the trial court lost jurisdiction. We therefore reverse the order directing Stefanovic to serve the jail term imposed as a condition of probation.

## FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case are not in dispute. Following her plea of no contest, Stefanovic was convicted on March 4, 1996, of carrying a

concealed weapon pursuant to § 941.23, STATS. The trial court withheld sentence and placed Stefanovic on probation for a period of one year. As a condition of probation, the court ordered Stefanovic to serve thirty days in the county jail. On March 7, Stefanovic filed a notice of intent to pursue postconviction relief pursuant to RULE 809.30(2)(b), STATS., and a motion for release pending appeal pursuant to § 969.01(2)(b), STATS. Properly recognizing its obligation to release Stefanovic pending appeal pursuant to §§ 969.01(2)(b) and 969.02, STATS., the trial court granted Stefanovic's request for release pending appeal. However, the court did not stay Stefanovic's probation, and she remained on probation during her appeal.

On January 8, 1997, Stefanovic's appellate attorney filed a no merit report with this court. *See* RULE 809.32, STATS. Stefanovic did not respond within the requisite thirty-day period. *See id.* On February 19, 1997, the no merit report was submitted to this court for our consideration. Thereafter, we formally accepted the report and summarily affirmed Stefanovic's conviction by an order issued on April 2, 1997. By this time, however, Stefanovic had already served the one-year term of probation, and the department had issued its certificate discharging Stefanovic from probation on March 27, 1997. The department filed a notice of this status change and a copy of the discharge with the trial court on April 15, 1997. Pursuant to RULE 809.26, STATS., the record on appeal was remitted to the trial court on May 6, 1997.[1]

---

[1] A petition for review to the Wisconsin Supreme Court must be filed within thirty days of an adverse decision of the court of appeals. *See* RULE 809.62, STATS. Therefore, unless a petition for review has been filed, the court of appeals remits the record to the trial court thirty-one days after the court of

Following remittitur, the trial court conducted a hearing on May 27, 1997, as to whether Stefanovic should be required to serve the jail term imposed as a condition of probation. At this hearing, Stefanovic's counsel questioned whether the court could order Stefanovic to serve the jail term since she had been discharged from probation. The court provisionally rejected this argument, but continued the matter to allow Stefanovic's attorney to further consider the issue.

The trial court next took up the matter on June 11, 1997. After hearing Stefanovic further on the issue, the court confirmed and elaborated on its prior ruling. The court acknowledged (as did the parties) that no direct precedent controlled the issue and stated that an appellate decision on the question would be helpful. As to the merits, the court noted that it had granted the stay of the jail term at Stefanovic's request and she should not be allowed to use her right to release pending appeal as a means to frustrate the court's sentence.

Stefanovic again appeals. Pending this appeal, the trial court has granted a further stay of the jail term.

## DISCUSSION

The issue before us is one of first impression. It requires that we apply the undisputed facts and history of this case to the statutes and administrative rules governing probation. That exercise presents a question of law which we review without deference to the trial court's ruling. *See Michael T. v. Briggs*, 204 Wis. 2d 401, 407, 555 N.W.2d 651, 654 (Ct. App. 1996). However, despite our de novo standard of review, we

appeals decision. Stefanovic did not seek supreme court review of our order in her prior appeal.

value a trial court's decision on such an issue. *See Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993).

Although no case law is directly on point, we draw guidance from three appellate decisions. First, we look to *R.L.C. v. State*, 114 Wis. 2d 223, 338 N.W.2d 506 (Ct. App. 1983). There, the juvenile court reimposed a restitution condition of probation which had been a condition of a prior probation which had lapsed. *See id.* at 224, 338 N.W.2d at 507. The court of appeals held that this violated the juvenile's protection against double jeopardy. *See id.* at 225–26, 338 N.W.2d at 508. The court said:

> Because the State made no attempt to enforce the $10 restitution order of May 7, 1981, which they clearly had the authority under the law to do, we hold that the trial court's order violates the double jeopardy clauses of the United States and the Wisconsin Constitutions. Requiring R.L.C. to now make restitution under a lapsed order amounts to being punished twice for the same offense.

*Id.* (footnote omitted).

Although Stefanovic does not raise a double jeopardy argument, *R.L.C.* is instructive because it clearly signals that a condition of a lapsed probation may not be reimposed in a later and different case. Here, although the postremittitur proceedings in the trial court were part of the same case, they clearly came after Stefanovic had been discharged from probation. The *ratio decidendi* of *R.L.C.* does not rest on the fact that the condition of probation was imposed in a separate case. Rather, it rests on the fact that the original probation had lapsed and the State had not taken any steps to extend the probation. As applied to this case, we note that § 973.09(3)(a), STATS., allows a trial court

to extend probation for cause if such action is taken prior to the expiration of the original probation period. No such extension was sought in this case by the State, the department or the trial court. *R.L.C.* supports Stefanovic's argument.

Next, we look to *State ex rel. Rodriguez v. DHSS*, 133 Wis. 2d 47, 393 N.W.2d 105 (Ct. App. 1986). In 1981, Rodriguez was ordered to serve a probation term consecutive to a prison term which he was then serving. *See id.* at 49, 393 N.W.2d at 105. Based upon Rodriguez' subsequent release and parole status, his probation would have begun on April 6, 1985. However, Rodriguez' parole agent was unaware of the consecutive probation order and mistakenly informed Rodriguez that he would be discharged from supervision on the date the probation should have commenced. *See id.* at 49, 393 N.W.2d at 106.

After that date, Rodriguez committed an assault on a third party. Based in part on this conduct, the department revoked Rodriguez' probation. *See id.* at 49–50, 393 N.W.2d at 106. On judicial review, the circuit court reversed the department's revocation order, ruling that the department had lost jurisdiction over Rodriguez. *See id.* at 51, 393 N.W.2d at 106. However, upon further review, the court of appeals reversed the circuit court's ruling. The court of appeals said, "Once custody is transferred to the department, *discharge from probation or parole under the release of the department occurs only 'upon the issuance of a discharge certificate by the secretary of [DHSS] at the expiration of the term noted on the court order.'*" *Id.* (emphasis added; quoted source omitted).

Although this is not a revocation case, *Rodriguez* is nonetheless instructive because it signals that the department's issuance of a discharge certificate is of

315

significant legal moment. Here, the department issued its certificate of discharge to Stefanovic upon her completion of the one-year period of probation. WISCONSIN ADM. CODE § DOC 328.17(2) provides in relevant part:

> A client shall be discharged upon the issuance of a discharge certificate by the secretary at the expiration of the term noted on the court order committing the client to the custody and supervision of the department *unless:*
> (a) *The court has subsequently modified the term and extended or reduced it[.]* [Emphasis added.]

Here, as we have already noted, the trial court never modified or extended Stefanovic's probationary term pursuant to § 973.09(3)(a), STATS. Absent such action, the department properly issued its certificate of discharge to Stefanovic. *Rodriguez* supports Stefanovic's argument.

Finally, we consider the Wisconsin Supreme Court's opinion in *Bartus v. DHSS*, 176 Wis. 2d 1063, 501 N.W.2d 419 (1993). To understand the court's ruling, we must recite the history of the case in some detail. In February 1986, the trial court sentenced Bartus to straight jail sentences on certain counts. However, as to other counts, the court imposed and stayed jail terms and placed Bartus on concurrent two-year probation terms. Bartus then appealed and the court stayed the sentences on all of the counts. See *id.* at 1067–68, 501 N.W.2d at 422.

In November 1987, some twenty months after the sentencing, the court of appeals reversed certain of the convictions and ordered resentencing on the remainder of the convictions. *See id.* at 1068, 501 N.W.2d at 422. However, the trial court did not resentence Bartus until April 1988, after Bartus' two-year probationary

terms had expired.[2] As a result, Bartus argued that the court had lost jurisdiction. The court rejected this argument and proceeded to resentence Bartus. Once again, the court imposed and stayed jail sentences against Bartus and placed him on probation. *See id.* at 1069, 501 N.W.2d at 422. In addition, the court ordered restitution as a condition of probation. *See id.*

Bartus refused to pay the restitution, adhering to his position that the trial court was without jurisdiction to conduct the resentencing. *See id.* Based on this refusal, the department revoked Bartus' probation. In so doing, the department rejected Bartus' jurisdictional argument, holding that it did not have the authority to void an otherwise facially valid circuit court judgment or order. *See id.* at 1069, 501 N.W.2d at 422–23. The circuit court upheld this ruling, but the court of appeals reversed on other grounds. *See id.* at 1070, 501 N.W.2d at 423. Upon further review, the supreme court reversed the court of appeals ruling. *See id.* at 1073–82, 501 N.W.2d at 421–28.

That brings us to the portion of *Bartus* which is important to this case. Having reversed the court of appeals holding, the supreme court turned to the State's alternative argument that a circuit court on review of a probation revocation did not have the authority to address a jurisdictional challenge to the sentence which produced the probation. *See id.* at 1082, 501 N.W.2d at 428. The supreme court rejected that argument. *See id.* at 1082–83, 501 N.W.2d at 428–29. The court said:

> If Bartus is correct that the circuit court was without authority to resentence him in 1988 because he

---

[2] The reason for the delay is not revealed in the supreme court decision.

had already served the initial 1986 sentence, *then the 1988 order for probation and restitution is null and void as a matter of law.*

*Id.* at 1083, 501 N.W.2d at 428 (emphasis added).

Because the record was unclear whether the trial court had stayed the probation pending appeal, the supreme court remanded the case to the trial court to make that determination. *See id.* at 1083, 501 N.W.2d at 429. The court concluded by stating, "If it is determined that [Bartus] has already completed the sentence for the 1986 conviction, *we direct the circuit court to order Bartus discharged from probation.*" *Id.* (emphasis added).

Here, unlike *Bartus*, there is no uncertainty as to what the trial court did when Stefanovic took her original appeal. The court clearly stayed only the jail term imposed as a condition of probation, not the probation itself. Had that been the situation in *Bartus*, it is clear that the supreme court would have ordered Bartus discharged from probation even though the restitution condition of the probation remained unsatisfied. *Bartus* supports Stefanovic's argument.

The State contends that the provisions of § 973.09(5), STATS., rendered the department's certificate of discharge a nullity in this case. This statute states, "When the probationer has satisfied the conditions of his or her probation, the probationer shall be discharged and the department shall issue the probationer a certificate of final discharge, a copy of which shall be filed with the clerk." *Id.* The State reasons that because Stefanovic has not satisfied the condition of probation, the discharge was of no legal effect.

However, we properly read § 973.09(5), STATS., in harmony with the extension provision of paragraph § 973.09(3)(a) and in light of the case law we have

already addressed. *R.L.C.* teaches that an unfulfilled condition of probation does not automatically extend the probation period. Rather, an extension must be obtained. *Bartus* teaches that if the probation has not been stayed and the period of probation has been served, the defendant is entitled to discharge as a matter of law even in the face of an unfulfilled condition of probation. And finally, *Rodriguez* strongly suggests that the issuance of the discharge certificate by the department is controlling. We see nothing in § 973.09(5) which negates the extension provisions of paragraph (3)(a) or the collective message of this case law.

We therefore conclude that the trial court lost jurisdiction over this case. In making this ruling, we candidly acknowledge that the trial court's loss of jurisdiction frustrates the trial court's sentencing scheme. However, it is axiomatic that before any court can act, it must have jurisdiction to do so. *See Kohler Co. v. Wixen*, 204 Wis. 2d 327, 336, 555 N.W.2d 640, 644 (Ct. App. 1996).

Finally, we address the unfortunate circumstances which contributed to the problem in this case, acknowledging that this discussion is dicta. It took almost a year for this court to decide Stefanovic's original appeal. By the time the case returned to the trial court, Stefanovic's probation was over. In short, the long time it took to decide Stefanovic's original appeal was a substantial factor in the subsequent events. The court of appeals was created in 1978 to alleviate the backlog of cases then pending in the Wisconsin Supreme Court. *See* Michael S. Heffernan, *Appellate Practice and Procedure in Wisconsin*, § 1.2, 1–2 to 1–3 (2d ed. 1997). When created, the court was composed of twelve judges

with attendant staff, including one law clerk per judge. The number of judges and staff were based on projections that within five years the court would reach its capacity of 1200 appeals annually. *See Cascade Mountain, Inc. v. Capitol Indem. Corp.*, 212 Wis. 2d 265, 270 n.3, 569 N.W.2d 45, 47 (Ct. App. 1997).

However, in 1979, the first full year of operation, 1986 appeals were filed with the court of appeals. *See id.* Thus, in just one year, the five-year projection was exceeded. Over the ensuing years, this trend has continued. In 1996, 3628 appeals were filed. *See id.* For the first nine months of 1997, 2827 appeals have been filed. This can be projected to a total of 3771 filings for the year. *See* COURT OF APPEALS MONTHLY STATISTICAL REPORT (Sept. 30, 1997). Yet, during this same period of time, the legislature has added but four additional judges with no increase in the allotted number of law clerks per judge.

The bottom line is this: since its inception, the number of court of appeals judges has increased by 33% percent while the court's present filings are in excess of 200% of the projected filings when the court was created. As a result, the 1978 supreme court backlog has simply been transferred to the court of appeals. Unless the legislature addresses this situation, this condition will worsen, and cases like the instant one will reoccur.

*By the Court.*—Order reversed.