STATE of Wisconsin EX REL. Ardonis GREER,
Petitioner-Respondent,†

v.

David H. SCHWARZ, Administrator, Division of
Hearings and Appeals, Respondent-Appellant.

Court of Appeals

*No. 2011AP2188. Submitted on briefs August 13, 2012.
—Decided October 10, 2012.*

2012 WI App 122

(Also reported in 825 N.W.2d 497.)

† Petition for Review Filed.

642

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jeffrey J. Kassel*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jennifer M. Severino* of *Severino Law Offices, LLC*, Racine.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J. David H. Schwarz, Administrator for the State of Wisconsin Division of Hearings and Appeals, appeals from a final order of the circuit court reversing his decision revoking Ardonis Greer's

probation. The court reversed the decision after concluding the department of corrections (DOC) was equitably estopped from seeking Greer's revocation because it had previously issued him a discharge certificate. We reverse and remand for reinstatement of the Division's decision.

## *Background*

¶ 2. The following facts are undisputed. Greer was convicted of two felonies, possession with intent to deliver THC, Count 1, and possession of a firearm by a felon, Count 3, in Racine county case No. 2004CF1184. Count 2 was dismissed and read in for sentencing purposes. Physically present at his sentencing on March 14, 2005, Greer was sentenced to three years in the Wisconsin Prison System on Count 1, bifurcated as fourteen months of initial confinement followed by twenty-two months of extended supervision. As evidenced by the judgment of conviction, Greer was sentenced to a bifurcated six-year term of imprisonment on Count 3, but the sentence was stayed and Greer was instead ordered to serve three years of probation "[c]onsecutive to Count 1." The DOC failed to enter the court's order related to Greer's three-year consecutive probation term on Count 3 into its computer record system.

¶ 3. Greer served his initial confinement and extended supervision related to Count 1. The DOC agent supervising Greer on his extended supervision informed Greer his supervision would be completed when his period of extended supervision expired on September 28, 2007. A few days later, Greer received a discharge certificate from the DOC stating in part: "You were sentenced to Wisconsin State Prisons. The [DOC] having determined that you have satisfied said sen-

644

tence, it is ordered that effective September 28, 2007, you are discharged absolutely." The certificate also informed Greer his right to vote and obligation for jury duty were restored.[1]

¶ 4. In November 2009, Greer was involved in an incident which ultimately resulted in his plea to a new felony charge, intimidation of a witness/threat of force, on June 25, 2010. On September 1, 2010, a DOC agent conducting a presentence investigation related to Greer's new conviction discovered Greer's three-year consecutive probation term related to Count 3 from his 2005 sentencing, which was set to expire on September 28, 2010. On September 2, 2010, the DOC took Greer into custody on a probation hold and initiated revocation proceedings.

¶ 5. Following a hearing, an administrative law judge (ALJ) for the Division revoked Greer's probation. Greer appealed to the administrator of the Division, Schwarz, who upheld the revocation. Greer petitioned the Racine County Circuit Court for a writ of certiorari. The court reversed the Division's decision revoking Greer's probation, holding that the DOC was equitably estopped from seeking Greer's revocation due to its issuance of the discharge certificate to him. The Division moved the court to reconsider its decision, arguing

---

[1] Greer also received a second discharge certificate stating in part:

> You were sentenced to Wisconsin State Prisons on March 14, 2005 . . . after being found guilty of violating the Wisconsin Statutes sections(s):
>
> 961.41(1M)(H)2 [related to Count 1]
>
> The [DOC] having determined that you have satisfied said judgment, it is ordered that effective September 28, 2007, you are discharged from said judgment only.

The focus of this appeal relates to the first certificate.

645

that equitable estoppel was not an available remedy based on the limited scope of certiorari review. The court denied the motion and the Division filed this appeal. Additional facts are included as necessary throughout the decision.

## *Discussion*

¶ 6. On certiorari review of an administrative decision revoking probation, we review the Division's decision, not the circuit court's. *See State ex rel. Warren v. Schwarz*, 211 Wis. 2d 710, 717, 566 N.W.2d 173 (Ct. App. 1997), *aff'd*, 219 Wis. 2d 615, 579 N.W.2d 698 (1998). The scope of our review is the same as that of the circuit court and is limited to determining: (1) whether the Division stayed within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will, not its judgment; and (4) whether the evidence was such that it might reasonably make the decision it made. *Id.* The Division, not the reviewing court, weighs the evidence presented at a revocation hearing. *See Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978). The court's inquiry is limited to whether there is substantial evidence to support the Division's decision. *Id.* If there is, we must affirm even if there is evidence that could support a contrary determination. *Warren*, 211 Wis. 2d at 726. Whether the Division acted according to law, however, is a question we review de novo. *State ex rel. Tate v. Schwarz*, 2002 WI 127, ¶ 16, 257 Wis. 2d 40, 654 N.W.2d 438.

¶ 7. The Division argues that it met all four criteria under certiorari review. Greer contends it met none of them. The Division is correct on all points.

*The Division retained jurisdiction over Greer*

■

¶ 8. Wisconsin's probation statute provides that an individual who is placed on probation for a felony shall be discharged from probation and issued a discharge certificate from the DOC "[w]hen the period of probation for [the] probationer has expired." WIS. STAT. § 973.09(5) (2009–10).[2] Consistent with § 973.09(5), as relevant here, the DOC rules provide that a probationer "shall be discharged upon the issuance of a discharge certificate by the secretary *at the expiration of the term noted on the court order* committing the client to the custody and supervision of the [DOC]." WIS. ADMIN. CODE § DOC 328.17(2) (Dec. 2006) (emphasis added).[3]

¶ 9. In his response brief, Greer acknowledges "that the [DOC] did issue the absolute discharge certificate *before* the 'expiration of the term noted on the court order . . .' with regards to the probation case. The three years of consecutive probation would have discharged on September 28, 2010." (Emphasis added.) Greer contends the DOC nonetheless lost jurisdiction over him and therefore could not move to revoke his probation when it issued him the discharge certificate indicating he was "discharged absolutely" "effective September 28, 2007." Greer is incorrect.

¶ 10. Here, the sentencing court ordered Greer to serve a three-year period of probation on Count 3 to begin at the expiration of his three-year term of imprisonment on Count 1. The discharge certificate could not

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[3] Except as otherwise noted, all references to the Wisconsin Administrative Code are to the December 2006 version, which is the current version of the DOC rules.

have had the effect of discharging Greer from that probation term because that three-year period of probation ordered by the court had not expired at the time the certificate was issued, as required by the cited statute and administrative code. Thus, to the extent the certificate could be interpreted as discharging Greer from the term of probation ordered by the court on Count 3, it was invalid. *See State ex rel. Anderson-El v. Cooke*, 2000 WI 40, ¶ 20, 234 Wis. 2d 626, 610 N.W.2d 821 (an administrative act is invalid if it conflicts with a statute or administrative rule).

¶ 11. Greer contends the DOC did not act in excess of its authority in issuing the discharge certificate because an administrative rule, WIS. ADMIN. CODE § DOC 328.17(2)(c), permits the DOC to terminate supervision early when "[t]here is a reasonable probability that it is no longer necessary either for the rehabilitation and treatment of the client or for the protection of the public that the [DOC] retain custody, and discharge is merited." Fatal to this contention, however, is the fact that Greer does not argue, and the record does not support the inference, that the DOC actually issued the discharge certificate pursuant to that code subsection, or that the certificate was issued for any reason other than an administrative error resulting from the DOC's failure to input Count 3 into its record system. Thus, § DOC 328.17(2)(c) is inapplicable here.

¶ 12. Greer also places much emphasis on our decisions in *State ex rel. Rodriguez v. DHSS*, 133 Wis. 2d 47, 393 N.W.2d 105 (Ct. App. 1986), and *State v. Stefanovic*, 215 Wis. 2d 310, 572 N.W.2d 140 (Ct. App. 1997), for the proposition that "the issuance of a discharge certificate is a 'significant legal moment.' " These cases do not assist Greer.

¶ 13. In *Rodriguez*, Rodriguez was convicted of child abuse and battery and ordered by the court to serve a two-year probation term consecutive to a prison term on an unrelated conviction. *Rodriguez*, 133 Wis. 2d at 49. In March 1985, unaware of the probation term due to begin upon the expiration of the unrelated sentence on April 6, 1985, Rodriguez's agent told Rodriguez he would be discharged from supervision on that date. *Id.* The agent discovered his mistake on May 20, 1985, and informed Rodriguez he was still on probation. *Id.* at 50. Between April 6 and May 20, however, Rodriguez had assaulted a woman. *Id.* at 49–50.

¶ 14. The department of health and social services (Department) commenced revocation proceedings against Rodriguez based in part on the assault. *Id.* at 50. Rodriguez argued at the revocation hearing that he had been discharged from his supervision at the time of the assault and that, because he did not know he was under supervision after April 6, it would be unfair to require him to follow the rules of supervision thereafter. *Id.* The hearing examiner found that Rodriguez knew he was on probation beginning April 6 because the circuit court had informed him at his sentencing that he would be serving a two-year period of probation following the completion of his prison term. *Id.*

¶ 15. On certiorari review, the circuit court reversed. *Id.* at 51. It concluded that the agent's oral statement to Rodriguez, although erroneous, released Rodriguez from his probation effective April 6 and deprived the Department of jurisdiction over him until May 20, when the agent discovered the error and informed Rodriguez he was on probation. *Id.* The court therefore concluded that the Department could not revoke Rodriguez for conduct occurring between April 6 and May 20. *See id.*

¶ 16. This court reversed. We noted that the judgment of conviction "unambiguously decreed that probation be served consecutive to the prison sentence[]," and, therefore, Rodriguez had been turned over to the custody of the Department "for purposes of serving *both* the prison sentence and the probationary term." *Id.* We concluded that the Department retained "jurisdiction even given the agent's erroneous statement." *Id.* We said this was "especially so in this instance" because Rodriguez knew the sentencing court had ordered his probation to follow immediately upon the expiration of parole. *Id.* at 52.

¶ 17. Greer points to the following language from *Rodriguez* as suggesting we would have concluded the Department had lost jurisdiction over Rodriguez if it had issued him a discharge certificate, even though his probation period had not expired: "Because no discharge certificate was produced for the child abuse and battery conviction, the [D]epartment still had jurisdiction even given the agent's erroneous statement." *Id.* at 51. However, that language cannot be read out of context. Immediately preceding the language Greer cites, we quoted the same provision applicable to this case stating that discharge occurs "only 'upon the issuance of a discharge certificate by the secretary . . . *at the expiration of the term noted on the court order.*' " *Id.* (quoting Wis. Admin. Code § HSS 328.17(2), now Wis. Admin. Code § DOC 328.17(2)) (emphasis added). Had we meant the mere issuance of the discharge certificate to control jurisdiction regardless of whether the term noted on the court order had expired, there would have been no reason for us to have included the highlighted language. Nowhere in *Rodriguez* do we suggest a discharge certificate in conflict with a court-ordered term of probation supersedes the court order.

650

¶ 18. Greer next cites language in *Stefanovic* stating "the [DOC's] issuance of a discharge certificate is of significant legal moment" as support for his argument that the DOC lost jurisdiction over him when it issued him the discharge certificate. *Stefanovic*, 215 Wis. 2d at 315–16. This statement, and the case itself, have limited application here because the issue in *Stefanovic* related to whether a circuit court could impose a previously stayed condition of probation, thirty days in jail, *after* the period of probation ordered by the court had expired and the DOC had issued a discharge certificate. *Id.* at 311–13. *Stefanovic* is important, however, for its suggestion that a discharge certificate's legitimacy may depend upon its consistency with the court-ordered period of supervision.

¶ 19. After noting that the DOC issued Stefanovic her discharge certificate upon her completion of the term of probation ordered by the court, we cited the following provision from Wis. Admin. Code § DOC 328.17(2):

> A client shall be discharged upon the issuance of a discharge certificate by the secretary at the expiration of the term noted on the court order committing the client to the custody and supervision of the [DOC] *unless:*
>
> (a) *The court has subsequently modified the term and extended or reduced it . . . .*

*Stefanovic*, 215 Wis. 2d at 316. We then stated: "Here . . . the trial court never modified or extended Stefanovic's probationary term . . . . *Absent such action,* the [DOC] *properly issued* its certificate of discharge to Stefanovic." *Id.* (emphasis added). Thus, we suggested in *Stefanovic* that, had the circuit court in that case ordered the original probation period modified, a dis-

651

charge certificate from the DOC might be *improperly issued* if it conflicted with a new court order altering the period of probation.

¶ 20. Consistent with Wis. Stat. § 973.09(5), Wis. Admin. Code § DOC 328.17(2), and our decisions in *Rodriguez* and *Stefanovic*, we conclude that because Greer's court-ordered three-year term of probation on Count 3 had not expired at the time the DOC commenced revocation proceedings, the DOC retained jurisdiction over Greer despite its issuance of the discharge certificate.

### The Division acted according to law

¶ 21. The circuit court reversed the Division's decision to revoke Greer because it concluded the DOC was estopped from seeking revocation due to its issuance of the discharge certificate. Greer argues on appeal that the Division is equitably estopped from revoking him. He further contends the Division acted contrary to law by revoking him because the DOC violated his due process rights and the concept of "fair play." The Division acted according to law.

¶ 22. As the Division argued in its motion for reconsideration and again on appeal, equitable relief is not available in a certiorari action. Our supreme court clarified this in *Town of Delafield v. Winkelman*, 2004 WI 17, 269 Wis. 2d 109, 675 N.W.2d 470, noting, "[W]e . . . have discovered no precedent that allows certiorari courts to sit in equity . . . . [C]ertiorari review is limited in scope. The traditional criteria by which certiorari courts review a board's decision do not involve consideration of equitable arguments." *Id.*, ¶¶ 31,

36; *see Winkelman v. Town of Delafield*, 2000 WI App 254, ¶ 5, 239 Wis. 2d 542, 620 N.W.2d 438 (The scope of certiorari "is limited to whether the tribunal has kept within the boundaries prescribed by the express terms of the ordinance, statute or law of this state. In its essence, circuit court review is supervisory in nature. The issue is the regularity of the inferior tribunal's proceeding." (Citations omitted.)); *see also Guerrero v. City of Kenosha Hous. Auth.*, 2011 WI App 138, ¶ 11, 337 Wis. 2d 484, 805 N.W.2d 127. Estoppel is an equitable remedy and thus cannot be employed in this certiorari action to estop the DOC from seeking revocation of Greer's probation or the Division from revoking Greer.[4]

¶ 23. The circuit court, like Greer, was concerned that revocation of Greer's probation after Greer had been issued the discharge certificate violated "basic principles of decency and fairness." While equitable estoppel is not an available remedy in a certiorari action, this concern is appropriately addressed as a question of due process. Based on the facts of this case, however, we conclude the DOC did not violate Greer's due process rights because Greer knew or should have known he was on probation at the time he committed the new intimidation of witness offense in November 2009 and we impute to him knowledge that he cannot violate other criminal laws while on probation.

---

[4] In denying the Division's motion for reconsideration, the circuit court stated that "[a]ny discussion [in *Town of Delafield v. Winkelman*, 2004 WI 17, 269 Wis. 2d 109, 675 N.W.2d 470] concerning whether certiorari Courts are precluded from hearing equitable arguments was, at best, dicta and not controlling." Even assuming the supreme court's language in *Winkelman* is dicta, we are nonetheless bound by it. *See Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶ 58, 324 Wis. 2d 325, 782 N.W.2d 682.

¶ 24. Greer contends he was never told during his three-year sentence on Count 1 that he had a consecutive probation term to serve and that he reasonably relied on the discharge certificate he received from the DOC. However, he acknowledged at the revocation hearing that he was physically present for his sentencing to hear the court sentence him on Counts 1 and 3. The ALJ found that Greer was present for his sentencing "and would have directly heard the court sentencing him to prison and also to a consecutive three-year period of probation." In its decision on Greer's administrative appeal, the Administrator concluded:

> Greer would have been in court at sentencing and therefore knew, or should have known, that he was required to serve a consecutive probation term. He should also have known that he would not have finished serving both the three year prison sentence and the consecutive three year probation term by the time he engaged in new criminal conduct on November 9, 2009, less than five years after his sentencing.[5]

¶ 25. Greer was issued the discharge certificate indicating he had satisfied his sentence "to Wisconsin State Prisons" just days after he finished serving his three-year sentence on Count 1 and, as he should have known, nearly a full three years before his consecutive probation on Count 3 would expire. Consistent with the Administrator's conclusion, at the time of his new felony offense, Greer could not have reasonably be-

---

[5] The Administrator further noted:

[N]othing in the discharge document[] indicates the [DOC's] intent to discharge Greer from his probation. Indeed, [the] discharge document[] begin[s] with the phrase, "You were sentenced to Wisconsin State Prisons . . . ." The courts have long recognized that probation is not a sentence within the meaning of WIS. STAT. § 973.09(1). The record does not show that the [DOC] ever issued a discharge certificate for Greer's probation. (Citations omitted.)

lieved he had completed the three-year period of probation the sentencing court had ordered him to serve consecutive to his three-year prison term or that he was otherwise absolved of the responsibility to serve it.

¶ 26. In addition, we may impute to Greer knowledge that he may not violate the law while on probation. *See G.G.D. v. State,* 97 Wis. 2d 1, 10, 12–13, 292 N.W.2d 853 (1980); *see also Rodriguez,* 133 Wis. 2d at 52 ("A petitioner cannot seriously contend that a probationer can violate the criminal laws of this state without affecting his or her probationary status . . . ."). Because Greer knew or should have known he was on probation when he committed his new felony offense and knew he could not violate the criminal laws while on probation, his due process rights were not violated by the DOC's revocation of his probation based on the new criminal violation.[6]

¶ 27. Greer raises other due process arguments. He contends his procedural due process rights were violated because the DOC failed to provide him with proper notice of which case it was seeking to revoke. He points out that one DOC revocation-related form identifies the case involved as "04CF1184B" and another identifies the case as "04CF1184A" and two others just cite the case number and do not reference "A" or "B." This issue is a nonstarter.

[6] The ALJ also found that Greer violated a court-ordered condition of probation prohibiting him from using or possessing alcohol. The record does not contain the sentencing transcript related to Counts 1 and 3 to clarify what Greer was told by the sentencing court regarding prohibitions related to alcohol, an otherwise lawful product. Because the revocation in this case ultimately was based upon Greer's new criminal violation, on this record, we do not decide whether revocation would have been appropriate on the alcohol ground alone.

¶ 28. With regard to case No. 2004CF1184, Greer was only convicted of Counts 1 and 3. He knew he had completed serving his three-year prison sentence on Count 1 and received the discharge certificate related to his completion of that sentence. There could be only one count remaining on No. 2004CF1184 that could possibly relate to the revocation. Further, each of the four documents complained of refers to case No. 2004CF1184 in the context of a *probation* revocation. As we have noted, Greer was present at his sentencing to hear that he was only ordered to serve probation on Count 3, the felon in possession of a firearm count.

¶ 29. The Division points to an exhibit from the revocation hearing, the Notice of Violation, Recommended Action, Statement of Hearing Rights and Receipt as being the document which actually provided Greer with notice of the nature of the allegations. Finding Greer was provided with adequate notice, the ALJ observed that that exhibit identifies the case on which the DOC was recommending revocation, No. 2004CF1184, and identifies the behavior the DOC believed Greer engaged in "contrary to this status on probation." At the hearing, the ALJ noted, without contradiction from Greer, that the exhibit indicated it was served on Greer "prior to his case running out." Notably, Greer does not contend he was actually uncertain about what case was being revoked. Greer received adequate notice regarding the revocation. His procedural due process rights were not violated.

¶ 30. Greer also argues that his substantive due process rights were violated because he was taken into custody "with no legal basis." He further argues that the DOC's actions in revoking him after issuing him the

discharge certificate "shocks the conscience." We disagree.

¶ 31. As previously explained, there was a legal basis for Greer's custody and revocation. Greer was present when the sentencing court ordered him to serve a three-year period of probation on Count 3 consecutive to his three-year prison term on Count 1. The DOC's issuance of the discharge certificate to Greer did not nullify or supersede the court's order imposing that three-year period of probation. Greer was still within that three-year period of probation when he committed the new felony offense and when revocation proceedings were initiated. Knowledge that he cannot commit a criminal offense is imputed to Greer. The DOC's initiation of revocation proceedings based upon Greer's new felony offense does not "shock the conscience" and did not violate his substantive due process rights.[7]

### *The Division properly exercised its discretion and reasonably made its decision*

¶ 32. Greer contends the Division's decision to revoke his probation was arbitrary and capricious,

---

[7] Greer complains about the Administrator's "fail[ure]" to address his argument that he was "induced" by the issuance of the discharge certificate to vote in the 2008 presidential election, when he would not have been able to legally do so if his right to vote really had not been restored, as the certificate stated. We find no fault in the Administrator's "fail[ure]" to address this issue since Greer's voting in the election was not one of the allegations put forth by the DOC as grounds for revocation of his probation and, therefore, was not relevant to the revocation decision. Additionally, the remainder of the due process issues Greer raises in his response brief are either undeveloped or conclusory statements. As such we do not address them. *See Wisconsin Conference Bd. of Trs. of United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶ 38, 243 Wis. 2d 394, 627 N.W.2d 469.

oppressive and unreasonable, and represented its will rather than its judgment. He further argues that the Division could not reasonably decide to revoke his probation based upon the evidence. The Division asserts it properly exercised its discretion and reasonably made its decision when it revoked Greer's probation. The Division is correct.

¶ 33. An agency's decision to revoke supervision is not arbitrary and capricious, and represents its judgment rather than its will, if the decision represents a proper exercise of discretion. *Warren*, 211 Wis. 2d at 724. On appeal of an administrative decision to revoke probation, the probationer has the burden of proving the Division did not properly exercise its discretion. *Id.* at 726. We further consider whether there was substantial evidence to support the revocation decision. *Van Ermen*, 84 Wis. 2d at 64.

¶ 34. The ALJ considered five probation violation allegations the DOC raised against Greer and found two of them to have been proven. The ALJ found that the DOC proved the allegation that Greer threatened the victim in the intimidation of a witness incident because Greer was convicted of that offense. The ALJ also found an alcohol-related allegation proven because Greer had admitted to that conduct. In addition, at the revocation hearing, the victim of the intimidation of witness offense testified to the underlying facts related to that conviction and the ALJ found him a credible witness. Following testimony presented at that hearing, however, the ALJ concluded the DOC had failed to prove the allegation that Greer possessed a firearm during the intimidation of witness offense because of the possibility the gun utilized was really an "Airsoft" gun. None-

theless, the ALJ found "[Greer's] use of a facsimile weapon with the intent for [the victim] to believe it was real and [the victim] did believe it was real is an aggravating factor in allegation two [related to Greer threatening the victim]."

¶ 35. The ALJ found revocation necessary to avoid undue depreciation of the seriousness of Greer's conduct, to hold Greer to account for his behavior, and "to protect the community from further criminal conduct by Mr. Greer." The ALJ concluded Greer's conduct was aggravated because he led the victim to believe he was in danger of being shot. The ALJ considered Greer's recommendation of tolling his probationary term back to the beginning and continuing him on probation, but rejected this alternative, finding it an inadequate response to his "serious new criminal behavior." The ALJ concluded that no other alternative to revocation would be an appropriate response to Greer's conduct.

¶ 36. The Administrator considered but rejected the argument that the DOC lost jurisdiction over Greer by issuing the discharge certificate. The Administrator also considered Greer's argument that revocation violated his due process rights and offended notions of decency and fairness, but found these arguments unpersuasive "when it comes to new criminal behavior." The Administrator sustained the revocation decision based on Greer's new criminal offense, concluding that Greer's threatening behavior and intimidation of a witness demonstrated he was a potential danger to others and that the need to protect the community outweighed "the positive factors that Greer cite[d] on appeal."[8]

---

[8] In his administrative appeal, Greer presented that he had complied with all the rules during his previous extended supervision, complied with the rules of his bond and reported as

¶ 37. In arguing that the Administrator erroneously concluded that Greer is a threat to the community, Greer points to the following: (1) initial consideration by the DOC to permit Greer to pay his fees and discharge from probation, rather than pursue revocation; (2) the ALJ's conclusion that the DOC had not proven Greer used a real gun in the course of the intimidation of witness offense; and (3) his good record while released on bond related to his new felony offense. However, the DOC ultimately did choose to pursue revocation of Greer's probation and the ALJ and Administrator concluded his new felony conviction for intimidation of witness with threat of force, and the facts underlying it, demonstrated he was a danger to the community and warranted revocation.

¶ 38. The Division's decision to revoke Greer was a reasonable one based upon the evidence and was the result of a proper exercise of discretion. We reverse the circuit court's order and remand for reinstatement of the Division's decision.

*By the Court.*—Order reversed and cause remanded with directions.

---

ordered for his presentence investigation related to his intimidation of witness charge, had no criminal charges between September 2007 and November 2009, and was "attending school, working full-time, and acting as a productive member of society."