# Supreme Court of Wisconsin

| | |
|---|---|
| CASE NO.: | 2019AP1618 |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin ex rel. Nudo Holdings, LLC, Petitioner-Appellant-Petitioner, v. Board of Review for the City of Kenosha, Respondent-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 395 Wis. 2d 261,952 N.W.2d 816
PDC No:2020 WI App 78 - Published

| | |
|---|---|
| OPINION FILED: | April 12, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 1, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Kenosha |
| JUDGE: | Anthony G. Milisauskas |

JUSTICES:

HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the petitioner-appellant-petitioner, there were briefs filed by Paul W. Zimmer and O'Neil, Cannon, Hollman, DeJong & Laing S.C., Milwaukee. There was an oral argument by Paul W. Zimmer.

For the respondent-respondent, there was a brief filed by Robert I. DuMez, Gino M. Alia, J. Michael McTernan and Alia, DuMez & McTernan, S.C., Kenosha. There was an oral argument by J. Michael McTernan.

An amicus curiae brief was filed on behalf of the League of Wisconsin Municipalities, Wisconsin Towns Association and Wisconsin Association of Assessing Officers by Julie M. Gay and Law Office of Julie M. Gay, Waukesha.

An amicus curiae brief was filed on behalf of Wisconsin REALTORS® Association, Wisconsin Builders Association and NAIOP-WI by Thomas D. Larson, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP1618
(L.C. No. 2018CV896)

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin ex rel. Nudo Holdings, LLC,**

    **Petitioner-Appellant-Petitioner,**

    **v.**

**Board of Review for the City of Kenosha,**

    **Respondent-Respondent.**

**FILED**

**APR 12, 2022**

Sheila T. Reiff
Clerk of Supreme Court

HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 BRIAN HAGEDORN, J. This is a property tax classification case. The property at issue was mostly raw and covered in underbrush, but also included several walnut and pine trees. The assessor classified the property as residential. Before the board of review, the landowner maintained the property should be classified agricultural (and therefore receive a lower tax rate). The board sustained the assessor's

classification, which the circuit court and the court of appeals affirmed.

¶2 Before us, the landowner contends the board did not act according to law because the current use of the property met the definition of agricultural, and the board's consideration of prospective residential use was improper. The landowner further argues the classification is not supported by sufficient evidence. We hold: (1) The board acted according to law when it understood that the land should be classified as agricultural only if it is devoted primarily to agricultural use——meaning the property is chiefly given to agricultural purposes; (2) The board did not err when it considered the prospective residential use of the property; and (3) The board's determination to sustain the residential classification was supported by sufficient evidence.

I. BACKGROUND

¶3 On September 11, 2017, Nudo Holdings, LLC (Nudo) purchased an 8.9-acre parcel of wooded, unused land in the City of Kenosha from Kenosha County for $100,000. Anthony Nudo, the owner of Nudo Holdings, LLC, testified before the Board of Review for the City of Kenosha (the Board) that he purchased the property to develop it. The property was part of the St. Peter's Neighborhood Plan——indicating the City saw its highest and best use as residential. Indeed, the City was aware Nudo planned to subdivide the property into as many as 18 residential lots.

2

¶4 At the time of purchase, the property was zoned A-2 agricultural, lacked access to sewer and water service, and contained no habitable structures. It consisted mostly of underbrush with pine and walnut trees scattered across the land. The trees were not planted in rows; rather, they grew at random on the property.

¶5 By January 1, 2018—the relevant timeframe for the property assessment—Mr. Nudo testified that "a bit of tilling" was done, but when pressed for more detail, stated only "not much." Trails were cut on the property to reach the "walnut groves" and the pine trees (described by Mr. Nudo as "Christmas trees"). Mr. Nudo explained to the Board that he and his wife walked the trails to harvest walnuts. Mr. Nudo gave the walnuts to his mother, who distributed some to her clients and "made some stuff" with the rest. Mr. Nudo also stated that the property was registered as a livestock premises and that he obtained permits and licenses to cut timber and keep up to 25 chickens on the property. But as of January 1, 2018, no pine trees were cut, nor had any chickens or other livestock been kept on the property.[1]

¶6 In 2018, the City assessor valued the property at $89,800 ($10,000 per acre) and classified the property residential for property tax purposes. The assessor testified

---

[1] Mr. Nudo also explained that he purchased 300 trees from the Wisconsin Department of Natural Resources in part to protect the walnut trees on his property from the wind. However, these trees were not planted until the spring of 2018—outside of the relevant timeframe.

before the Board that he classified the property this way because, "What we see is truly a -- a fairly, if not all raw piece of land. I don't see any effort, any action, any plan in terms of agricultural. This is a piece of land that has some things growing on it." The assessor further explained:

> There is extremely heavy underbrush on a majority of this parcel, and it remains there. There is no evidence of livestock being allowed or able to roam free on the parcel. There is no evidence of furrows or harvesting of anything and no evidence was presented in terms of how much was done. There is no evidence, and in fact, I believe, in one of the documents we got, that any Christmas trees were taken from this property or how many nuts were taken from here.

The assessor asked Nudo for additional evidence of harvesting, furrows, crops, or fencing, but Mr. Nudo indicated he did not have any additional information to provide.

¶7 Nudo timely objected to the residential classification, contending the property should be classified agricultural. The Board unanimously sustained the assessor's classification. Nudo petitioned for certiorari, and the circuit court[2] ordered the Board to reconvene and reconsider the classification in light of our decision in Ogden.[3] On remand,

---

[2] The Honorable Anthony G. Milisauskas of the Kenosha County Circuit Court presided.

[3] In particular, the circuit court instructed the Board to reconsider the classification in light of our conclusion "that a business purpose is not required in order for land to be classified as 'agricultural land' for property tax purposes." State ex rel. Peter Ogden Fam. Tr. v. Bd. of Rev., 2019 WI 23, ¶46, 385 Wis. 2d 676, 923 N.W.2d 837.

4

the Board reconsidered and again sustained the assessor's residential classification, this time by a vote of 4 to 1. Both the circuit court and court of appeals affirmed the Board's determination. State ex rel. Nudo Holdings, LLC v. Bd. of Rev. for City of Kenosha, 2020 WI App 78, ¶1, 395 Wis. 2d 261, 952 N.W.2d 816. We granted Nudo's petition for review.

## II.  DISCUSSION

### A.  Challenging the Classification of Real Property

¶8  Property assessment for taxation purposes takes place "as of the close of January 1 of each year." Wis. Stat. § 70.10 (2019-20).[4]  This assessment involves both valuation and classification of property. Wis. Stat. § 70.32. Wisconsin law requires the assessor to segregate land "on the basis of use" into one of the following eight classifications:  (1) "Residential";  (2)  "Commercial";  (3)  "Manufacturing";  (4) "Agricultural";  (5)  "Undeveloped";  (6)  "Agricultural forest"; (7) "Productive forest land"; and (8) "Other."  § 70.32(2)(a). Nudo's petition for certiorari challenges the Board's determination to sustain the residential classification.

¶9  An aggrieved property owner like Nudo may file an objection to an assessment with the municipal board of review. Wis. Stat. § 70.47(7).  When the board receives an objection within the statutory time frame, the board sets a hearing.

---

[4] All subsequent references to the Wisconsin Statutes are to the 2019-20 version.

§ 70.47(7)-(8). At the hearing, the assessor is required to "provide to the board specific information about the validity of the valuation to which objection is made" and "provide to the board the information that the assessor used to determine that valuation." § 70.47(8)(h). The assessor's valuation is entitled to a presumption of validity by the board, but "may be rebutted by a sufficient showing by the objector that the valuation is incorrect." § 70.47(8)(i). If the property owner desires to challenge the board's decision, it may, among other options, seek certiorari review by the circuit court. § 70.47(13); State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev., 2021 WI 89, ¶17, 399 Wis. 2d 696, 967 N.W.2d 460 (listing the three options for appeal).

¶10 This court sits in the same posture as the circuit court, and therefore we review the Board's determination, not that of the circuit court or court of appeals. Our review "is limited to whether the board's actions were: (1) within its jurisdiction; (2) according to law; (3) arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) supported by evidence such that the board might reasonably make the order or determination in question." State ex rel. Collison v. City of Milwaukee Bd. of Rev., 2021 WI 48, ¶20, 397 Wis. 2d 246, 960 N.W.2d 1.

¶11 Nudo asserts that the Board's determination was not according to law for two independent reasons and that it was not supported by sufficient evidence.

6

B.   According to Law

1.   Devoted Primarily to Agricultural Use

¶12   Nudo first argues that the Board did not act according to law because it improperly discounted the agricultural use present on the property.   Nudo contends that because those activities were the only uses the property was put to, the property was devoted primarily to agricultural use.   That is not, however, what the law says.

¶13   Wisconsin Stat. § 70.32(2)(c) provides two key definitions that assist in determining whether Nudo's land could be classified as agricultural.   "'Agricultural land' means land, exclusive of buildings and improvements and the land necessary for their location and convenience, that is <u>devoted primarily</u> to agricultural use."   § 70.32(2)(c)1g.   (emphasis added).   "Agricultural use" is also a defined term.   Its meaning is "defined by the department of revenue by rule and includes the growing of short rotation woody crops, including poplars and willows, using agronomic practices."[5]   § 70.32(2)(c)1i.

¶14   Following the statutory instruction to promulgate a rule, the Department of Revenue defines "agricultural use" as "any of the following":

> (a)   Activities included in subsector 111 Crop Production, set forth in the North American Industry Classification System (NAICS), United States, 1997,

---

[5] The statute also defines "Agronomic practices"; it "means agricultural practices generally associated with field crop production, including soil management, cultivation, and row cropping."   Wis. Stat. § 70.32(2)(c)1k.

published by the executive office of the president, U.S. office of management and budget.

(b) Activities included in subsector 112 Animal Production, set forth in the North American Industry Classification System, United States, 1997, published by the executive office of the president, U.S. office of management and budget.

(c) Growing Christmas trees or ginseng.

Wis. Admin. Code § Tax 18.05(1)(a)-(c) (July 2018).[6]

¶15 The administrative code goes on to explain what assessors must look for when determining if land is devoted primarily to agricultural use: "Land devoted primarily to agricultural use shall typically bear physical evidence of agricultural use, such as furrows, crops, fencing or livestock, appropriate to the production season." Wis. Admin. Code § Tax 18.06(1). In addition, "Land devoted primarily to agricultural use" in this chapter of the tax code "means land in an agricultural use for the production season of the prior year, and not in a use that is incompatible with agricultural use on January 1 of the assessment year." Wis. Admin. Code § Tax 18.05(4).

¶16 Another statute, Wis. Stat. § 70.32(1), requires assessors to comply with the Wisconsin Property Assessment

---

[6] Agricultural use also includes unimproved land subject to or enrolled in certain state or federal easements or programs. Wis. Admin. Code § Tax 18.05(1)(d).

All subsequent references to the Wis. Admin. Code ch. Tax 18 are to the July 2018 register date.

8

Manual (WPAM) when assessing property.[7] The WPAM in turn provides further instructions on how to determine when land is devoted primarily to agricultural use. In one particularly apt example, it provides:

> Since walnut trees do not produce walnuts until 10 years of age and maximum production does not occur until 20 to 30 years of age, there may be instances where agricultural use is questionable. If a stand of walnut trees is in its early stages of development and not producing walnuts, the assessor should evaluate if the number of walnut trees is sufficient enough such that it represents the land's primary use. Additionally, the assessor should determine if there is adherence to the walnut industry standards. The following questions should assist an assessor in determining adherence to the walnut industry standards. Please note: This should not be construed as an all-inclusive list.
>
> - What is the number of walnut trees per acre?
>
> - Are there other types of trees intermixed with the walnut trees? And to what extent?
>
> - What is the spacing between the trees?
>
> - Were the trees thinned?
>
> - Are the soil types conducive to walnut production?
>
> - Are the site characteristics conducive to walnut production?

---

[7] "Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual . . . ." Wis. Stat. § 70.32(1); see also State ex rel. Collison v. City of Milwaukee Bd. of Rev., 2021 WI 48, ¶29, 397 Wis. 2d 246, 960 N.W.2d 1.

- Have measures been taken to ensure proper tree growth, which can include tree pruning, weed control, animal control, etc.?

- If the trees are producing walnuts, are the walnuts being harvested?

1 Wisconsin Property Assessment Manual (WPAM) 14-19 (2017).[8]

¶17 Returning to the principal statutory question, in order for land to be classified agricultural, and therefore receive a potentially sizable tax break,[9] the land must be "devoted primarily to agricultural use." Wis. Stat. § 70.32(2)(c)1g.; Wis. Admin. Code § Tax 18.06(1). Admittedly, some of the activity on Nudo's property could be described as agricultural. Walnut farming is included in subsector 111 Crop Production set forth in the NAICS 1997 publication as one kind of "agricultural use."[10] Wis. Admin. Code § Tax 18.05(1)(a).

---

[8] All subsequent references to the WPAM are to the 2017 publication, https://www.revenue.wi.gov/documents/wpam17.pdf.

[9] The general rule is that taxation must be uniform. Wis. Const. art. VIII, § 1. However, "Taxation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property." Id. Thus, certain classifications of property change the valuation otherwise assigned to the property under Wis. Stat. § 70.32(1). Agricultural land is "assessed according to the income that could be generated from its rental for agricultural use." § 70.32(2r). Agricultural forest land and undeveloped land are "assessed at 50 percent of its full value." § 70.32(4). Land classified residential is afforded no discount; it is assessed at its full value determined under § 70.32(1).

[10] The NAICS is reproduced in full in the WPAM. See 1 WPAM 14-A-20.

And "[g]rowing Christmas trees" can also constitute "agricultural use." § Tax 18.05(1)(c).[11]

¶18 However, some agricultural use——even if it is the only "use" the land is put to——does not mean the land is "devoted primarily to agricultural use." Wis. Stat. § 70.32(2)(c)1g.; Wis. Admin. Code § Tax 18.06(1). "[D]evoted primarily" is the key phrase here. Being "devoted" to something means to be given over to and committed to that thing.[12] And "primarily" means chiefly or mainly.[13] As a matter of plain English, an agricultural classification is only proper if the land is chiefly given over to agricultural use.

¶19 This understanding is reflected in the administrative rules and the WPAM. The administrative rules explain that land devoted primarily to agricultural use often leaves physical marks——"furrows, crops, fencing or livestock"——on the land. Wis. Admin. Code § Tax 18.06(1). The land should bear witness to its use in the prior production season, in whatever form that evidence is demonstrated. Wis. Admin. Code §§ Tax 18.05(4), 18.06(1). And as the WPAM's specific instructions on walnut

---

[11] As previously noted, Nudo obtained a license to keep up to 25 chickens, but as of January 1, 2018, no chickens were kept on the property. Therefore, Nudo was not engaging in activity included in subsector 112 Animal Production set forth in the NAICS. See Wis. Admin. Code § Tax 18.05(1)(b).

[12] American Heritage Dictionary 512 (3d ed. 1992) ("1. To give or apply (one's time, attention, or self) entirely to a particular activity, pursuit, cause, or person. 2. To set apart for a specific purpose or use: land devoted to mining.").

[13] Id. at 1438 ("Chiefly; mainly.").

11

trees demonstrate, the existence of some walnut trees is not enough. The WPAM tells the assessor to go further and "evaluate if the number of walnut trees is sufficient enough such that it represents the land's primary use," and determine "if there is adherence to the walnut industry standards." 1 WPAM 14-19. So minimal harvesting of walnuts, even in the absence of other activity, generally will not by itself establish that land is devoted primarily to agricultural use. If it did, even an empty and otherwise unused piece of property with a solitary wild raspberry bush harvested once a year would fit the bill.

¶20 Here, the Board correctly understood that whether the property was "devoted primarily to agricultural use" looks to whether the land is chiefly given over to agricultural use. Just because the sole productive activities, however small, could be described as agricultural does not mean the land's main use was agricultural. The Board's determination in this regard was according to law.

## 2. Prospective Residential Use

¶21 Nudo next argues that the Board did not act according to law by considering prospective residential use when it sustained the assessor's residential classification. In Nudo's view, the residential classification violated the statutory directive that property must be classified "on the basis of use" because the land neither was nor imminently would be used for housing. See Wis. Stat. § 70.32(2)(a). Nudo's interpretation is incorrect.

12

¶22 "Residential" property under the law "includes any parcel or part of a parcel of untilled land that is not suitable for the production of row crops, on which a dwelling or other form of human abode is located and which is not otherwise classified under this subsection." Wis. Stat. § 70.32(2)(c)3. (emphasis added). It is certainly true that no dwelling or human abode was on the property at the time of the assessment. But notably, this definition is inclusive, not comprehensive. This is in contrast to the statutory definitions of every other classification, each of which begin with the word "means," rather than "includes."[14] Taking this distinction to mean what it says, the "residential" classification includes, but is not

_____

[14] The definitions in Wis. Stat. § 70.32(2)(c) begin:

1d. "Agricultural forest land" means . . . .

1g. "Agricultural land" means . . . .

1i. "Agricultural use" means . . . .

1k. "Agronomic practices" means . . . .

1m. "Other," . . . means . . . .

2. "Productive forest land" means . . . .

3. "Residential" includes . . . .

4. "Undeveloped land" means . . . .

(Emphasis added.)

13

limited to, land that currently has on it a "dwelling or other form of human abode."[15]  § 70.32(2)(c)3.

¶23 Statutory history confirms the import of this distinction.[16]  The definition of "residential" was created in 1986 and has remained unchanged since then.  Compare 1985 Wis. Act 153, § 12 with Wis. Stat. § 70.32(2)(c)3.  The same act that created the definition of "residential" also defined "agricultural," "productive forest land," and "swampland or wasteland."  1985 Wis. Act 153, § 12.  While the definitions of "productive forest land" and "swampland or wasteland" began with "means," "agricultural" was defined as, "includes any body of water on private premises that is used as a part of a private fish hatchery licensed under s. 29.52."  Id. (emphasis added).  The definition of "agricultural" was later repealed and the definition of "agricultural land" was created to read, "'Agricultural land' means land, exclusive of buildings and improvements, that is devoted primarily to agricultural use, as defined by rule."  1995 Wis. Act 27, § 3362F (emphasis added).  This change in language from "includes" to "means" confirms the legislature's word choices here reflect a difference in

---

[15] "When the legislature uses different terms in the same act, we generally do not afford them the same meaning."  State ex rel. DNR v. Wis. Ct. of App., 2018 WI 25, ¶28, 380 Wis. 2d 354, 909 N.W.2d 114.

[16] An inquiry into statutory history is part and parcel of a plain meaning analysis.  Fabick v. Evers, 2021 WI 28, ¶30 n.12, 396 Wis. 2d 231, 956 N.W.2d 856.

14

statutory meaning.  This is no mere accident of legislative drafting.

¶24  Therefore, by use of the word "includes," Wis. Stat. § 70.32(2)(c)3. contemplates that land other than the type described in § 70.32(2)(c)3. could still be classified as residential.  Residential "use" is not, under any statutory language, limited to property with habitable homes currently or imminently on the property.  This begs the question of what else might fall within a residential classification.

¶25 Fortunately, we are not left without additional direction.  The WPAM——guidance that is required by law to be given and followed (Wis. Stat. § 70.32(1))——tells us the residential classification "includes vacant land in cities and villages where the most likely use would be for residential development."  1 WPAM 7-14.  And when assessors are determining whether vacant land should be classified residential, the assessor is instructed to consider the following:

- Are the actions of the owner(s) consistent with an intent for residential use?

- Is the size of the parcel typical of residential or developing residential parcels in the area?

- Is the parcel zoned residential or is residential zoning likely to be allowed?

- Is the parcel located in a residential plat, subdivision, CSM or near other residential development?

- Does the parcel's topography or physical features allow for residential use?

15

- Is the parcel located in an urban or rapidly changing to urban area, as contrasted with a location distant from much residential activity[?]

- Are there any other factors affecting the parcel which would indicate residential use is reasonably likely or imminent[?]

Id. at 12-1.

¶26 As these required considerations make clear, future planned residential development is a permissible basis on which to rest a residential classification. Just as by statute residential use includes land where a human abode is currently located (Wis. Stat. § 70.32(2)(c)3.), so too the statutory command to follow the WPAM (§ 70.32(1)) means a residential classification also "includes vacant land in cities and villages where the most likely use would be for residential development" and land where "residential use is reasonably likely." 1 WPAM 7-14 (emphasis added); id. at 12-1. Accordingly, when the law says property must be classified "on the basis of use" on January 1 of the assessment year, land has a current residential "use" not only if human dwellings are present, but also if they are reasonably likely or planned.[17] The Board therefore acted

---

[17] The dissent is premised on the faulty and unsupported assumption that land planned for future residential development cannot constitute current residential "use" for property tax purposes. But the dissent points to no statutory language that limits a residential classification in this way, and conspicuously avoids giving any effect to the legislature's choice to use "includes" and not "means" in its definition of a residential classification. Resting on this error, the dissent fashions a conflict between the statutes and the WPAM that does not exist.

16

according to law when it considered the prospective residential use of Nudo's property.

## C. Supported by Sufficient Evidence

¶27 Finally, Nudo asserts the Board's determination to sustain the residential classification was not supported by sufficient evidence. On certiorari review, the test "for sufficiency of the evidence is the substantial-evidence test." Stacy v. Ashland Cnty. Dept. of Public Welfare, 39 Wis. 2d 595, 602, 159 N.W.2d 630 (1968). Perhaps misnamed in view of modern parlance, the substantial evidence test is not a high bar. "Substantial evidence is evidence of such convincing power that reasonable persons could reach the same decision as the board." Clark v. Waupaca Cnty. Bd. of Adjustment, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994). In light of our "highly deferential" approach "to the board's findings, we may not substitute our view of the evidence for that of the board." Id.

¶28 The evidence here comfortably meets this standard. The Board heard evidence from both Mr. Nudo and the assessor. Combined, this testimony established that the 8.9-acre property consisted mostly of underbrush. It was essentially vacant and raw with several walnut and pine trees scattered throughout. Nudo purchased the property to develop it into residential lots. And the property was in a neighborhood plan for future development in the City of Kenosha. The evidence reflects that any agricultural uses were minor and isolated, not the primary use of the land. Taken together, reasonable persons could

17

certainly reach the same decision as the Board. The Board's determination to sustain the residential classification was supported by sufficient evidence.

### III. CONCLUSION

¶29 Nudo challenges the Board's classification of the property as residential. We conclude the Board acted according to law when it looked for more than some minimal agricultural use in evaluating whether the property was devoted primarily to agricultural use, and when it considered the prospective residential development of the property. Finally, the Board's determination to sustain the residential classification was supported by sufficient evidence. For these reasons, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.

18

¶30 PATIENCE DRAKE ROGGENSACK, J. *(dissenting).* The majority opinion errs because it fails to recognize and analyze the connection between the relevant statutes and the relevant administrative rule and how their connection bears on the question of whether Nudo Holdings, LLC's property qualified for an agricultural classification on January 1, 2018. Because I conclude that an understanding of this connection shows that the Board of Review incorrectly applied the law, which error the majority affirms, I respectfully dissent.

## I. BACKGROUND

¶31 Nudo Holdings, LLC purchased the subject property on September 11, 2017, when it was zoned agricultural. On January 1, 2018, Kenosha reclassified the land as residential for assessment appraisal purposes, on which Nudo was taxed.

¶32 Nudo objected to the reclassification and asked for a hearing before the Kenosha Board of Review, claiming that the assessor did not act according to law. At the hearing, he explained that on January 1, 2018,[1] the date for which classification was determined, he had continued to use the property agriculturally. He explained that there had been no residential use of the property; it contained no access to sewer or water service and no habitable structures. There was no evidence presented that the property was "not suitable" for the production of row crops.

---

[1] Property is valued as of January 1 of each calendar year. Wis. Stat. § 70.10 ("The assessor shall assess all real and personal property as of the close of January 1 of each year.").

¶33 The records from hearings before the Board of Review show that in 2017 Nudo ordered 300 pine trees to plant as windbreaks to protect 120 walnut trees. It shows that walnuts were harvested in December of 2017; that Nudo had a timber cutting notice approved on December 4, 2017; that permission to harvest Christmas trees was obtained in 2017; that the state registered livestock approval for the property on December 8, 2017.

¶34 Nudo owned the property for only 3.5 months before it was reclassified as residential. Of those 3.5 months, two months, November and December, were winter months when most agricultural activities in Wisconsin are quiescent.

¶35 The Board of Review affirmed the assessor's decision; the circuit court and the court of appeals affirmed as well. The majority opinion, once again, affirms. All missed how important January 1, 2018, is to a competent analysis of the case before us, except for the thoughtful discussion in the court of appeals dissent.[2]

## II. DISCUSSION

### A. Standard of Review

¶36 This case is before us on certiorari review of the decision of the Board of Review. Wis. Stat. § 59.694(10). Accordingly we review whether: (1) the Board remained within its jurisdiction; (2) the Board acted according to law; (3) the Board's action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; (4) the Board could

---

[2] *State ex rel. Nudo Holdings, LLC v. Bd. of Rev. for City of Kenosha*, 2020 WI App 78, ¶38, 395 Wis. 2d 261, 952 N.W.2d 816 (Reilly, J. dissenting).

reasonably make its determination based on the evidence presented. FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶8, 301 Wis. 2d 321, 733 N.W.2d 287.

¶37 Although an assessor's valuation is entitled to a presumption of correctness, Wis. Stat. § 70.49(2), the classification of property underlying this assessment appraisal derives from statutory and administrative rule interpretation. Therefore, classification is a question of law wherein we independently review the assessor's interpretation and application of relevant statutes and administrative rules to determine classification. Regency W. Apartments, LLC v. City of Racine, 2016 WI 99, ¶22, 372 Wis. 2d 282, 888 N.W.2d 611.

B. Statutory and Administrative Rule Interpretation

¶38 Determining whether Nudo's property was lawfully classified as residential requires us to interpret and apply several statutes. We interpret statutes to determine what they mean so they may be given their proper effect upon the facts presented. State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the statutory language, which we give its common, ordinary accepted meaning unless it involves technical or specially-defined words or phrases to which we give defined meanings. Id., ¶45.

¶39 Statutes should be read to give reasonable effect to every word so that no word or phrase becomes surplusage. Warehouse II, LLC v. DOT, 2006 WI 62, ¶16, 291 Wis. 2d 80, 715 N.W.2d 213. When statutory terms are capable of differing reasonable interpretations they are ambiguous. Id., ¶17.

3

¶40 This decision also involves the interpretation and application of an administrative rule. Generally, we use the same rules of construction and interpretation for administrative rules as we do with statutes. Voces De La Frontera, LLC v. Clarke, 2017 WI 16, ¶13, 373 Wis. 2d 348, 891 N.W.2d 803.

## 1. Wisconsin Stat. § 70.32

¶41 Correctly interpreting and applying Wis. Stat. § 70.32 is critical to this controversy. Section 70.32(2)(a)1. requires the assessor to classify land on the basis of use, separate from improvements. It provides:

> (a) The assessor shall segregate into the following classes on the basis of use and set down separately in proper columns the values of the land, exclusive of improvements, and, except for subds. 5., 5m., and 6., the improvements in each class:
>
> 1. Residential.
>
> 2. Commercial.
>
> 3. Manufacturing.
>
> 4. Agricultural.
>
> 5. Undeveloped.
>
> 5m. Agricultural forest.
>
> 6. Productive forest land.
>
> 7. Other.

§ 70.32(2). Of the statutory classifications provided, the parties have focused only on residential and agricultural. Therefore, I will as well.

¶42 In the matter before us, classifications are based on the use to which the land is placed as of January first of the

taxation year. Wis. Stat. §§ 70.10, 70.32(2)(a) and Wis. Admin. Code § Tax 18.05(4). The assessor classified Nudo's property as residential.

¶43 Residential land is defined by statute. It "includes any parcel or part of a parcel of untilled land that is not suitable for the production of row crops, on which a dwelling or other form of human abode is located and which is not otherwise classified under this subsection." Wis. Stat. § 70.32(2)(c)3.

¶44 "Not suitable" is not a specially defined phrase, and "suitable" is not a specially defined term. Therefore we use common, acceptable definitions, as can be found in a dictionary. Tele-Port, Inc. v. Ameritech Mobile Commc'ns, Inc., 2001 WI 261, ¶17, 248 Wis. 2d 846, 637 N.W.2d 782. Webster defines "suitable" as "adapted to a use or purpose" and its antonym as "unsuitable." Webster's New Collegiate Dictionary, 1165 (1974). Webster defines "unsuitable" as "not fitting" or "inappropriate." Id., 1283.

¶45 Employing those common definitions, there was no testimony at the Board of Review hearings that Nudo's property was "not fitting" or "inappropriate" for the production of row crops. The assessor said only that it was largely brush covered. He said nothing about the lack of suitability for the production of row crops. Nudo said that he had cut paths in the brush to access the walnut and Christmas trees and that he had ordered 300 trees to plant as wind-breaks for the walnut trees.

¶46 It was undisputed that no dwelling or other building sufficient for human occupancy existed on the property. In

addition, Nudo testified that there was no sewer or water service on the property, which would be necessary to begin to make it suitable for home construction.

¶47 So what use had been made of Nudo's property that supports its classification as residential when Wis. Stat. § 70.32(2)(a) requires that classification be based on use and, in the dispute before us, use as of January 1, 2018? Wis. Stat. § 70.10; Wis. Admin. Code § Tax 18.05(4). The majority opinion asserts that the Wisconsin Property Assessment Manual (WPAM), which assessors are required to consult via § 70.32(1), permits classifications based on possible prospective uses.[3] However, the majority opinion goes further than that. It concludes that "Nudo's interpretation is incorrect" when he claims that classifications must be "on the basis of use."[4]

¶48 While I of course agree that WPAM says what it says, when WPAM conflicts with a statute, the statute controls. Metro. Holding Co. v. Bd. of Rev., 173 Wis. 2d 626, 632-33, 495 N.W.2d 314 (1993). Here, there is an administrative rule, as well as a statute, that drives the decision on classification and the correct date for determining it, which is January 1, 2018 as I explain below.

¶49 The majority reasons that because the definition of "residential" begins with the word, "includes," rather than the word, "means," "the 'residential' classification includes, but is not limited to, land that currently has on it a 'dwelling or

---

[3] Majority op., ¶¶16, 25, 26.

[4] Id., ¶21.

6

other form of human abode.'"[5] The majority concludes its reasoning with "by the use of the word 'includes,' Wis. Stat. § 70.32(2)(c)3. contemplates that land other than the type described in § 70.32(c)3. could still be classified as residential."[6]

¶50 In addition, just as the majority's reasoning negates the statutory requirement for a structure that could be used as a human abode, it also ignores the statutory requirement that residentially classified land is "not suitable for the production of row crops." Wis. Stat. § 70.32(c)3. Setting land outside of the residential classification if it could be used for the production of row crops certainly meant something to the legislature that drafted § 70.32(2)(c)3.

¶51 Furthermore, ignoring a criterion for land that cannot be classified as residential makes the statutory requirement about row crops mere surplusage, contrary to the rules by which we construct statutes. Warehouse II, 291 Wis. 2d 80, ¶16. Nevertheless, the majority opinion does not mention that limitation on residential classifications, possibly because there was no evidence presented to the Board of Review that Nudo's land was not suitable for the production of row crops.

¶52 The date for classifying Nudo's property was January 1, 2018. Wis. Stat. § 70.10. As of that date, there was no testimony that anyone had ever lived on Nudo's land; there was no testimony that the land was not suitable for row crops. It

---

[5] Id., ¶22.

[6] Id., ¶24.

7

appears the assessor chose residential classification, notwithstanding Nudo's land's failure to satisfy the statutory requirements of Wis. Stat. § 70.32(2)(c)3., believing that all this could occur in the future because WPAM permitted future uses. However, the assessor's selection ignores January 1, 2018, in regard to that date's relevance when considering a dispute involving a claimed agricultural classification.

¶53 Let us begin by looking at the agricultural classification and whether the law and the testimony support it. Agricultural land is defined by statute and by administrative rule. They work together to inform our understanding of the parameters of the agricultural classification in this dispute.

¶54 Wisconsin Stat. § 70.32(2)(c)1g. provides that "Agricultural land" is land "that is devoted primarily to agricultural use." Section 70.32(2)(c)li. defines "Agricultural use" as that use that is "defined by the department of revenue by rule."

### 2. Wisconsin Admin. Code § Tax 18.05

¶55 Wisconsin Admin. Code § Tax 18.05 combines with the statutory directives, as it contains important Department of Internal Revenue definitions. It provides in relevant part:

> (1) "Agricultural use" means any of the following:
>
> (a) Activities included in subsector 111 Crop Production, set forth in the North American Industry Classification System (NAICS) . . . .
>
> (b) . . . .
>
> (c) Growing Christmas trees or ginseng.

. . . .

(4) "Land devoted primarily to agricultural use" means land in an agricultural use for the production season of the prior year, and not in a use that is incompatible with agricultural use on January 1 of the assessment year.

§ Tax 18.05.

¶56 I follow the requirements of Wis. Admin. Code § Tax 18.05, which are directed by Wis. Stat. § 70.32(2)(c)li., to determine whether Nudo's land was "devoted primarily to agricultural use." The majority opinion makes up its own definition of "devoted primarily to agricultural use" instead of interpreting § 70.32(2)(c)li and § Tax 18.05 as required by the rules of statutory interpretation.[7] Section Tax 18.05(4) provides that we determine whether the land was in "an agricultural use" in the prior season and whether its use on January 1 was "incompatible with agricultural use."

¶57 "Incompatible" is not a defined term in the administrative rule. Because we generally apply the same rules of construction to interpreting administrative rules as we apply to statutes, I consult a dictionary for a plain meaning definition of incompatible. Voces De La Frontera, 373 Wis. 2d 348, ¶13. "Incompatible" is defined as "incapable of association because incongruous, discordant, or disagreeing; unsuitable for use together because of undesirable chemical or physiological effects." Webster's New Collegiate Dictionary, 581.

---

[7] Id., ¶¶23, 24.

9

¶58 Wisconsin Admin. Code § Tax 18.05(4) expressly confirms that "January 1 of the assessment year," not some future year, is the controlling date when evaluating a claimed agricultural classification. Notwithstanding this clear directive, the majority opinion is based on future use, not on January 1, 2018.[8] The majority opinion simply finds the plain words of § Tax 18.05(4) inconvenient, so it ignores them.

¶59 Furthermore, Wis. Stat. § 70.10 connects with the administrative rule to confirm the date on which claimed agricultural classifications must be made. The classification decision was an integral component of the assessment accepted by the Board of Review; therefore, recognizing and understanding this connection is critical to evaluating whether the Board of Review's decision followed the law.

¶60 Statutory classification directives provide a level playing field for citizens and municipalities because they provide the process that both parties are to use in classification disputes. When this court does not follow the required date of classification set by statute and instead affirms a classification decision at a date contrary to the dates set out in Wis. Stat. §§ 70.10[9] and 70.32(2)(c)li[10] and contrary to Wis. Admin. Code § Tax 18.05(4),[11] the court's

---

[8] Id., ¶¶2, 24, 25, 26, 29.

[9] "The assessor shall assess all real and personal property as of the close of January 1 of each year." Wis. Stat. § 70.10.

[10] "'Agricultural use' means agricultural use as defined by the department of revenue by rule . . . ." Wis. Stat. § 70.32(2)(c)li.

10

decision harms both the citizen and the municipality because its decision changes the process the legislature created to resolve classification disputes.

¶61 Nudo's land was owned by Kenosha County when he purchased it on September 11, 2017. There were walnut trees and Christmas trees growing on it then. Growing walnuts is a subsector 111 Crop Production, set forth in the NAICS, and therefore an agricultural use. Wis. Admin. Code § Tax 18.05(1)(a). Growing Christmas trees is also an agricultural use. § Tax 18.05(1)(c).

¶62 Walnut trees do not bear fruit until they are approximately 10 years of age. WPAM at 14-19. Nudo testified that he harvested walnuts in 2017, so the trees were mature and bearing fruit in the production season prior to his purchase.

¶63 Nudo also ordered 300 trees to plant as wind-breaks to protect the walnut trees; he obtained permits to harvest Christmas trees and to raise livestock. There was no testimony that anything about his use of the property on January 1, 2018, was incompatible with the agricultural use that occurred the prior production season.

¶64 Instead, the uncontradicted testimony showed Nudo's use of the land was similar to the agricultural use to which it was placed in the prior production season. He cut paths to more

---

[11] "'Land devoted primarily to agricultural use' means land in an agricultural use for the production season of the prior year, and not in a use that is incompatible with agricultural use on January 1 of the assessment year." Wis. Admin. Code § Tax 18.05(4).

11

easily get to the walnut trees, ordered trees to plant as wind-breaks for the walnuts, obtained permits to raise cattle and obtained needed approvals to cut Christmas trees. There was no testimony that any of these uses was incompatible with agricultural use of the land.

¶65 Wisconsin Stat. §§ 70.10, 70.32(2)(c)1i. and Wis. Admin. Code § Tax 18.05(4) connect to require the claimed agricultural use be evaluated as of January 1, 2018. The Board of Review relied on some potential future use due to the recommendation of the assessor. The assessor relied on a statement from WPAM. However, for this dispute, employing a future use conflicts with both statutes and the administrative code. Failing to follow what they direct and relying on WPAM is an error of law. Metro. Holding Co., 173 Wis. 2d at 632-33.

¶66 The majority errs in the same way when it relies on WPAM's guidance that an assessor can look forward into prospective use when classifying property.[12] When property for which agricultural classification is claimed, January 1 of the assessment year must be the classification date in order to comply with Wis. Admin. Code § Tax 18.05(4), Wis. Stat. §§ 70.10 and 70.32(2)(c)1i. Ignoring January 1 as the dispositive date, is in conflict with both the administrative code and statutes. As we long ago explained, when WPAM and statutes conflict, statutes control. Id.

III. CONCLUSION

---

[12] Majority op., ¶¶25, 26.

12

¶67 The majority opinion errs because it fails to recognize and analyze the connection between the relevant statutes and the relevant administrative rule and how that connection bears on the question of whether Nudo Holdings, LLC's property qualified for an agricultural classification on January 1, 2018. Because I conclude that an understanding of this connection shows that the Board of Review incorrectly applied the law, which error the majority affirms, I respectfully dissent.

¶68 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice REBECCA GRASSL BRADLEY join this dissent.