**2025 WI 35**

# Supreme Court of Wisconsin



STATE OF WISCONSIN EX REL. WISCONSIN DEPARTMENT OF CORRECTIONS,
DIVISION OF COMMUNITY CORRECTIONS,
*Petitioner-Respondent-Petitioner*,

*v.*

BRIAN HAYES, et al.,
*Respondent-Appellant*.

No. 2023AP1140
Decided July 3, 2025

REVIEW of a decision of the Court of Appeals.
Milwaukee County Circuit Court (Thomas J. McAdams, J.)
No. 2022CV4878

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which KAROFSKY, C.J., DALLET, HAGEDORN, and PROTASIEWICZ, JJ., joined. ZIEGLER, J., filed a concurring opinion. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

¶1    ANN WALSH BRADLEY, J. The petitioner, the Wisconsin Department of Corrections, Division of Community Corrections (DOC), seeks review of a court of appeals decision that reinstated a decision of Division of Hearings and Appeals (DHA) administrator Brian Hayes

declining to revoke Keyo Sellers's probation.[1]  The administrator reversed an initial determination by an administrative law judge (ALJ) that Sellers's probation should be revoked, determining that the revocation relied on hearsay evidence for which the required good cause was not shown to overcome Sellers's due process right to confront adverse witnesses.

¶2     DOC argues that the administrator erred by ignoring non-hearsay evidence supporting revocation.  It further contends that the administrator erred by excluding the hearsay testimony where good cause exists in the record to overcome Sellers's due process right.

¶3     We conclude that under the certiorari standard of review, the administrator's decision must be upheld because it is supported by substantial evidence and was made according to law.

¶4     Accordingly, we affirm the decision of the court of appeals.

I

¶5     In February of 2019, Sellers was convicted of a drug offense and later placed on probation.  DOC sought to revoke his probation in March of 2022 based on five alleged violations of the conditions of probation.  Specifically, DOC alleged that Sellers:  (1) entered K.A.B.'s home without her consent, (2) sexually assaulted K.A.B., (3) took $30 from K.A.B. without her consent, (4) subsequently trespassed on K.A.B.'s property by walking onto her porch and looking through the windows without her consent, and (5) provided false information to his probation agent.

¶6     Sellers stipulated to the fifth alleged violation, and a revocation hearing on the remaining four allegations proceeded before an ALJ.  Notably, and as will be discussed below, DOC did not present K.A.B. as a witness.  Instead, DOC attempted to admit her testimony by other means, including a written statement provided by K.A.B. and the testimony of a police officer who interviewed her.  Sellers's probation agent explained the decision not to subpoena K.A.B. as follows:  "[S]he

---

[1] *State ex rel. DOC, Div. of Cmty. Corr. v. Hayes*, No. 2023AP1140, unpublished slip op. (Wis. Ct. App. May 14, 2024) (per curiam) (reversing the order of the circuit court for Milwaukee County, Thomas J. McAdams, Judge).

told the police and she's told me she can't 100% ID her assailant," so the agent "didn't feel it was necessary to have her come in and provide testimony and go through the trauma of her assault to only say that she believes that Mr. Sellers could be the assailant, but she doesn't know 100%."

¶7    DOC presented live testimony from three witnesses at the revocation hearing:  the police officer who investigated K.A.B.'s report of sexual assault and burglary, an analyst from the state crime laboratory, and Sellers's probation agent.  The officer testified regarding his interaction with K.A.B. and relayed what she had reported to law enforcement.  He stated that K.A.B. had installed security cameras after the attack, which "almost a week to the day of the original assault" recorded a man "on her front porch prowling and peering into her front living room window."  Further, the officer testified that facial recognition software had been used on that security camera footage, leading him to Sellers after the software indicated a match.

¶8    Several physical features of the person in the security video matched Sellers.  Although K.A.B. could not identify Sellers with certainty, the officer interviewed Sellers's ex-wife, who according to the officer's testimony was "absolutely sure" that the man in the video was Sellers.

¶9    The crime lab analyst testified that she completed DNA testing on evidence collected from the scene and from a sexual assault examination of K.A.B.  She testified that the sample collected was "consistent" with Sellers's profile, but admitted on cross-examination that the profile would also occur in "approximately one in every 278 African American individuals."  Based on census data, this means that the profile would match 389 people in the City of Milwaukee.[2]

¶10    Finally, Sellers's probation agent testified that she met with K.A.B., but as noted above, did not subpoena her for the revocation hearing.  The agent further testified that she viewed the security camera

---

[2] Sellers's counsel asked the ALJ to take judicial notice that the profile would match 289 people in the City of Milwaukee.  However, as the court of appeals noted, if there are 108,173 African-American males in Milwaukee as the data presented indicated, then there would actually be 389, not 289, people in the city who match the profile.  *See id.*, ¶5 n.2.

footage and was 99 percent sure that the man in the video was Sellers "based on his appearance, based on his walk, and based on the fact that I've supervised him, you know, for almost 18 months."

¶11    Sellers did not testify at the revocation hearing but provided a written statement that is in the record.  He stated that he has "never been on [K.A.B.'s] property or in the property," he is not the person in the video and he "did not sexually assault anyone."

¶12    Following the hearing, the ALJ issued a decision revoking Sellers's probation.  The ALJ concluded that the first four allegations had been established by a preponderance of the evidence, relying on the following rationale:

> The credible testimony of [the crime lab analyst] confirms that a DNA profile consistent with Mr. Sellers was recovered from K.A.B.  There is no credible explanation for why Mr. Sellers' DNA would be on K.A.B. but for the assault. Additionally, Mr. Sellers can be seen on surveillance video trespassing onto K.A.B.'s porch and looking into her windows without permission on a later date after the sexual assault occurred.  K.A.B. reported that she believed the individual seen on the surveillance video was the same individual who assaulted her based on his physical appearance and mannerisms.

Accordingly, the ALJ determined that "confinement is appropriate to protect the community from further criminal behavior by Mr. Sellers" and revoked his probation.

¶13    Sellers appealed the ALJ's decision to the administrator.[3] Conducting a "de novo review of the evidence presented" before the ALJ,[4] the administrator reversed that decision.  He highlighted the fact that K.A.B. was not called to testify and the ALJ's reliance on "the hearsay statements of K.A.B.," concluding that K.A.B.'s hearsay statements were

---

[3] *See* WIS. ADMIN. CODE § HA 2.05(8) (Mar. 2017).

[4] *See State ex rel. Foshey v. DHSS*, 102 Wis. 2d 505, 516, 307 N.W.2d 315 (Ct. App. 1981).

not admissible under the rules of evidence and "there was no good cause shown to deny Sellers the due process right to confront this adverse witness."

¶14 The administrator described K.A.B.'s account of the events as "critical to the DOC's allegations" because it is "the only account that describes the alleged non-consensual entry into K.A.B.'s home, the alleged non-consensual sexual contact with her, the alleged non-consensual taking of $30 dollars from her, and the subsequent alleged trespassing on her property (which required evidence of non-consent)." He determined that reliance on K.A.B.'s "hearsay account (without a finding of good cause) violates Seller's constitutional right to due process. And without K.A.B.'s hearsay statements, there is no evidence to explain what took place." Absent such hearsay statements, "Sellers provided the only non-hearsay account of events: that he has never been to K.A.B.'s residence and he 'did not sexually assault anyone.'"[5]

¶15 Good cause was not shown to justify the denial of Sellers's right to confront K.A.B., the administrator determined, because "there was no basis to find that there was any 'difficulty, expense, or other barriers to obtaining live testimony' of K.A.B." Additionally, the administrator concluded that there was "no basis to find that K.A.B.'s hearsay statements were admissible under the rules of evidence." Ultimately, based on the sole proven violation (the stipulation that Sellers provided false information to his probation agent), the administrator determined that "revocation and confinement are not needed to protect the public from further crime or to prevent the undue depreciation of the seriousness of the violation."

¶16 DOC sought certiorari review of the administrator's decision in the circuit court, and the circuit court reversed the administrator's decision. Subsequently, the administrator appealed, and the court of appeals reversed the circuit court, affirming the administrator's decision not to revoke Sellers's probation. *State ex rel. DOC, Div. of Cmty. Corr. v.*

---

[5] The administrator determined that Sellers's statement "is not hearsay because it was offered against him as a party opponent in this litigation." *See* WIS. STAT. § 908.01(4)(b)1. (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

*Hayes*, No. 2023AP1140, unpublished slip op. (Wis. Ct. App. May 14, 2024) (per curiam).  DOC petitioned for this court's review.

## II

¶17    A probation revocation decision is reviewable by certiorari, which is "a mechanism by which a court may test the validity of a decision rendered by a municipality, administrative agency, or other quasi-judicial tribunal."  *See State ex rel. Greer v. Wiedenhoft*, 2014 WI 19, ¶35, 353 Wis. 2d 307, 845 N.W.2d 373; *State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev.*, 2021 WI 89, ¶18, 399 Wis. 2d 696, 967 N.W.2d 460. Certiorari review presents a narrow inquiry and is limited to the record before the agency.  *City of Waukesha*, 399 Wis. 2d 696, ¶19.

¶18    Pursuant to the certiorari standard, we review the decision of the DHA administrator, not that of the circuit court.  *State ex rel. Greer v. Schwarz*, 2012 WI App 122, ¶6, 344 Wis. 2d 639, 825 N.W.2d 497.   Our review is limited to (1) whether the administrator kept within his jurisdiction; (2) whether the decision was according to law; (3) whether the administrator's action was arbitrary, oppressive or unreasonable and represented his will and not his judgment; and (4) whether the evidence was such that the administrator might reasonably make the order or determination in question.  *See State ex rel. Nudo Holdings, LLC v. Bd. of Rev. for City of Kenosha*, 2022 WI 17, ¶10, 401 Wis. 2d 27, 972 N.W.2d 544.

## III

¶19    We begin by addressing DOC's argument that the administrator erred by ignoring non-hearsay evidence supporting revocation.   Subsequently, we examine the argument that the administrator erred by excluding hearsay testimony where good cause exists in the record to overcome Sellers's due process right to confront adverse witnesses.

## A

¶20    DOC argues first that the administrator erred by ignoring non-hearsay evidence that supports revocation.  Such an argument boils down to an assertion that the decision is not supported by substantial evidence under the fourth certiorari prong, i.e., whether the decision is

supported by evidence such that the administrator might reasonably make the determination in question.[6]

¶21    At the outset, it is important to highlight the DHA administrator's role in examining the evidence and our limited standard of review.  When a decision made by an ALJ is appealed to the administrator, the administrator conducts a de novo review of the evidence presented before the ALJ.  *State ex rel. Foshey v. DHSS*, 102 Wis. 2d 505, 516, 307 N.W.2d 315 (Ct. App. 1981).  In other words, the administrator owes no deference to the factual findings or legal analysis of the ALJ.

¶22    While the administrator's review of the ALJ's decision is conducted de novo, the same is not true of our review here.  We review the administrator's decision, not the circuit court's or the ALJ's.  *Greer*, 344 Wis. 2d 639, ¶6.  We do not weigh the evidence.  *Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978); *State ex rel. Washington v. Schwarz*, 2000 WI App 235, ¶17, 239 Wis. 2d 443, 620 N.W.2d 414 (explaining that "assigning weight to the evidence in a revocation hearing is the province of the [administrator]").

¶23    "We may not substitute our judgment for that of the division; we inquire only whether substantial evidence supports the division's decision."  *Von Arx v. Schwarz*, 185 Wis. 2d 645, 656, 517 N.W.2d 540 (Ct. App. 1994).  "If substantial evidence supports the division's determination, it must be affirmed even though the evidence may support a contrary determination."  *Id.*  "Substantial evidence" is "evidence of such convincing power that reasonable persons could reach the same decision as the [administrator]."  *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶43, 362 Wis. 2d 290, 865 N.W.2d 162 (internal quotations omitted); *see also Von Arx*, 185 Wis. 2d at 656 ("Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a

---

[6] In its briefing, DOC additionally alludes to an argument under the third certiorari prong that the decision to disregard the non-hearsay evidence was arbitrary and represented the administrator's will and not his judgment.  Such an argument was not well-developed and was largely derivative of the argument made on the "substantial evidence" prong.  Accordingly, we do not address it as a separate argument.

conclusion." (internal quotations omitted)). It is a low burden to meet. *Washington*, 239 Wis. 2d 443, ¶17.

¶24 DOC asserts that the administrator ignored crucial non-hearsay evidence showing that Sellers committed the rule violations in question. Specifically, DOC contends that the administrator ignored two key pieces of evidence: (1) the DNA evidence and (2) the security camera footage.

¶25 We are not persuaded by DOC's argument. In essence, DOC asks us to weigh the evidence differently than did the administrator, which would contravene our established standard of review. Reasonable minds could arrive at the conclusion that the DNA evidence was far from airtight and did not weigh heavily (or at all) in DOC's favor. DOC asks us to adopt the position of the ALJ, who weighed this evidence more heavily. Yet, the ALJ made a logical leap when she found that a DNA profile "consistent with Mr. Sellers" and almost 400 other men in Milwaukee meant that "Mr. Sellers' DNA" was in fact "on K.A.B." Reasonable minds could weigh this evidence less heavily, as the administrator did.

¶26 Next, we turn to the security camera footage. Even assuming that the man in the video was Sellers, it was not unreasonable to conclude that the footage on its own did not establish every element of the alleged violations or tie the person in the footage to the earlier offenses. Indeed, as the court of appeals determined, it was reasonable to conclude that K.A.B.'s testimony "was necessary for DOC to prove all the elements of the alleged probation violations (e.g., non-consent, and that the person on the porch was also the person who sexually assaulted K.A.B.)." *Hayes*, No. 2023AP1140, unpublished slip op., ¶19.

¶27 It is DOC who has the burden to prove an alleged probation violation by a preponderance of the evidence. *Von Arx*, 185 Wis. 2d at 655. There is a reasonable view of the evidence under which DOC has not met that burden and could not meet that burden without K.A.B.'s hearsay statements. In other words, given the evidence before him, the administrator's determination was reasonable. *See Nudo Holdings*, 401 Wis. 2d 27, ¶10. Even if there is evidence supporting a contrary determination, we must affirm the administrator's decision if substantial evidence supports the decision. *Von Arx*, 185 Wis. 2d at 656.

¶28    We therefore conclude that the administrator's decision here was supported by substantial evidence.

B

¶29    DOC argues next that the administrator erred by excluding hearsay testimony where good cause exists in the record to overcome Sellers's due process right to confront adverse witnesses.[7]  This argument is presented by DOC as one pursuant to the third "arbitrary, oppressive, or unreasonable" certiorari prong.  We think it more properly addressed under the second "according to law" prong.

¶30    It is well-established that revocation of probation implicates a probationer's protected liberty interest.  *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (extending *Morrissey*'s protections to probation revocation as well as parole revocation).  Although a probationer is entitled to due process of law before probation may be revoked, a probationer is not entitled to the full panoply of legal rights accorded to those subject to criminal process.  *State ex rel. Vanderbeke v. Endicott*, 210 Wis. 2d 502, 513–14, 563 N.W.2d 883 (1997).

¶31    Among the "minimum requirements of due process" that must be afforded to probationers is "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."  *Morrissey*, 408 U.S. at 489.  Such a procedure serves to "protect the defendant against revocation of probation in a constitutionally unfair manner."  *Black v. Romano*, 471 U.S. 606, 613 (1985).

¶32    The court of appeals has articulated two distinct pathways to demonstrate good cause.  *State ex rel. Simpson v. Schwarz*, 2002 WI App 7,

---

[7] In *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972), the United States Supreme Court undertook its analysis under the umbrella of the due process clause of the Fourteenth Amendment, not the Sixth Amendment's confrontation clause.

¶¶20–22, 250 Wis. 2d 214, 640 N.W.2d 527.[8]  First, it presented a balancing test, indicating that a determination of good cause for not allowing confrontation "should generally be based upon a balancing of the need of the probationer in cross-examining the witness and the interest of the State in denying confrontation, including consideration of the reliability of the evidence and the difficulty, expense, or other barriers to obtaining live testimony."  *Id.*, ¶20.  Accordingly, the court of appeals has required that the DOC "provide a reason for why it will not make a witness available for cross-examination."  *Id.*  Second, good cause may be demonstrated with a showing that "the evidence offered in lieu of an adverse witness's live testimony would be admissible under the Wisconsin Rules of Evidence."  *Id.*, ¶22.

¶33    A more thorough examination of *Simpson* provides greater context for our analysis in the present case.  In *Simpson*, the court addressed a similar situation where a sexual assault victim was not called to testify at a revocation hearing.  In a key difference, the victim there was a child rather than an adult.  Revoking Simpson's probation, the administrator relied on the victim's out-of-court statements because they "bore 'sufficient indicia of reliability to establish by a preponderance of the evidence that Mr. Simpson sexually assaulted her in violation of his probation rules.'"  *Id.*, ¶9.  However, the administrator did not make a specific finding of good cause for failing to require the victim to testify. *Id.*, ¶14.

¶34    The court of appeals concluded that the administrator erred by failing to comply with *Morrissey* in that he did not make a good cause finding before accepting the out-of-court statements.  *Id.*, ¶15.  However, this error was ultimately determined to be harmless because the second pathway was fulfilled.  That is, that the testimony at issue would have been admissible under the rules of evidence based on the record in that case.  *Id.*, ¶22.

¶35    Specifically, the court of appeals determined that the victim's out-of-court statements were admissible under the requirements set forth in *State v. Sorenson*, 143 Wis. 2d 226, 421 N.W.2d 77 (1988), for

---

[8] We assume without deciding that *State ex rel. Simpson v. Schwarz*, 2002 WI App 7, 250 Wis. 2d 214, 640 N.W.2d 527, sets forth the proper standard for analyzing good cause.

admission of hearsay statements of child sexual assault victims under the residual hearsay exception. *See* WIS. STAT. § 908.03(24) ("A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness."). Namely, the *Sorenson* court enumerated five factors that must be considered to assess the admissibility of a child's out-of-court statement under the residual exception:

> First, the attributes of the child making the statement should be examined, including age, ability to communicate verbally, to comprehend the statements or questions of others, to know the difference between truth and falsehood, and any fear of punishment, retribution or other personal interest, such as close familial relationship with the defendant, expressed by the child which might affect the child's method of articulation or motivation to tell the truth.

> Second, the court should examine the person to whom the statement was made, focusing on the person's relationship to the child, whether that relationship might have an impact upon the statement's trustworthiness, and any motivation of the recipient of the statement to fabricate or distort its contents.

> Third, the court should review the circumstances under which the statement was made, including relation to the time of the alleged assault, the availability of a person in whom the child might confide, and other contextual factors which might enhance or detract from the statement's trustworthiness.

> Fourth, the content of the statement itself should be examined, particularly noting any sign of deceit or falsity and whether the statement reveals a knowledge of matters not ordinarily attributable to a child of similar age.

> Finally, other corroborating evidence, such as physical evidence of assault, statements made to others, and opportunity or motive of the defendant, should be examined for consistency with the assertions made in the statement.

*Id.* at 245–46. This test is fact dependent and no single factor is dispositive. *Id.* at 246; *State v. Mercado*, 2021 WI 2, ¶56, 395 Wis. 2d 296, 953 N.W.2d 337.

¶36 Applying these factors, the *Simpson* court determined that the victim's statements "possess sufficient circumstantial guarantees of trustworthiness to qualify under the residual hearsay exception." *Simpson*, 250 Wis. 2d 214, ¶30. Accordingly, the court of appeals found a basis for good cause in the record. *Id.*

¶37 With the *Simpson* court's analysis in mind, we address the facts of the present case with regard to the two manners of demonstrating good cause. We address first the balancing test. Because it did not apply the good cause balancing test, we observe that the *Simpson* court found it unnecessary to determine the "contours of the good cause requirement." *Id.*, ¶22. The court did, however, state that the balancing must include "consideration of the reliability of the evidence and the difficulty, expense, or other barriers to obtaining live testimony." *Id.*, ¶20.

¶38 In the present case, we have no information in the record regarding any barriers to obtaining K.A.B.'s live testimony. The record reflects that the probation agent was concerned about retraumatizing her: "I didn't feel it was necessary to have her come in and provide testimony and go through the trauma of her assault to only say that she believes that Mr. Sellers could be the assailant, but she doesn't know 100%."[9] While retraumatization is certainly a serious concern, there is no indication in the record that K.A.B. herself was concerned about retraumatization or

---

[9] Sellers's counsel at the revocation hearing stated that she "underst[ood] completely why the Department did not have the victim testify in this case." At oral argument before this court, counsel for DOC suggested that this statement, coupled with Sellers's failure to object to K.A.B.'s non-appearance at the revocation hearing, constitutes a forfeiture of the argument that she should have testified. *See State v. Counihan*, 2020 WI 12, ¶25, 390 Wis. 2d 172, 938 N.W.2d 530 ("Forfeiture is the failure to make the timely assertion of a right."). Such an argument was raised in the court of appeals, *see Hayes*, No. 2023AP1140, unpublished slip op., ¶15 n.4, but was not developed in the briefing before this court. Accordingly, we do not address the argument. *See Sw. Airlines Co. v. DOR*, 2021 WI 54, ¶32 n.10, 397 Wis. 2d 431, 960 N.W.2d 384 (explaining that this court "generally do[es] not address undeveloped arguments").

whether the agent even discussed this with her.[10]   With no specific information in the record, to accept DOC's argument would establish a per se "retraumatization" exception to hearsay that could be asserted in every case.  This would be a sea change in the law and we decline to adopt it here.

¶39    There is likewise no testimony in this record from any source regarding any other "difficulty" or "expense" that K.A.B.'s testimony would have entailed.   Absent any testimony on these factors that is specific to this victim, it was reasonable for the administrator to conclude, as he did, that "there was no basis to find that there was any 'difficulty, expense, or other barriers to obtaining live testimony' of K.A.B., which is fatal to this particular good cause test."   Because the administrator properly applied the balancing test, his determination was made according to law.

¶40    We address next the second manner of demonstrating good cause—that the testimony at issue would have been otherwise admissible under the rules of evidence.  *See Simpson*, 250 Wis. 2d 214, ¶22.  There is no dispute that K.A.B.'s testimony is hearsay, that is, an out-of-court statement offered for the truth of the matter asserted.   *See* WIS. STAT. § 908.01(3); *State v. Hanson*, 2019 WI 63, ¶19, 387 Wis. 2d 233, 928 N.W.2d 607.  Yet, DOC seeks admission of the evidence under the residual hearsay exception.  *See* WIS. STAT. § 908.03(24).

¶41    The administrator declined to admit K.A.B.'s hearsay testimony, determining that "there is no basis to find that K.A.B.'s hearsay statements were admissible under the rules of evidence."   Such a conclusion is consistent with the arguments made in this case and with residual exception jurisprudence.

¶42    "The residual hearsay exception is designed as a catch-all exception that allows hearsay statements that may not comport with established exceptions, but which still demonstrate sufficient indicia of reliability to be admitted."  *State v. Huntington*, 216 Wis. 2d 671, 687, 575 N.W.2d 268 (1998).  "It is intended that the residual hearsay exception rule

---

[10] We make no determination either way, but we observe that if some evidence were entered in the record relating specifically to K.A.B.'s concerns about retraumatization, DOC's assertion of good cause here may be stronger.

will be used very rarely, and only in exceptional circumstances." *State v. Stevens*, 171 Wis. 2d 106, 120, 490 N.W.2d 753 (Ct. App. 1992).

¶43    The question of whether testimony "would be admissible under the Wisconsin Rules of Evidence," *Simpson*, 250 Wis. 2d 214, ¶22, is inextricably intertwined with the standard under which this court normally reviews the admission of evidence. Specifically, when we review a question of the admission of evidence, we do so under an erroneous exercise of discretion standard. *Huntington*, 216 Wis. 2d at 680–81. That is, we examine not whether we agree with the determination to admit or deny admission of the evidence, but whether the decision maker, here the administrator, exercised his discretion "in accordance with accepted legal standards and in accordance with the facts of record." *Id.*

¶44    DOC makes no detailed argument here that K.A.B.'s statement is accompanied by sufficient indicia of reliability so as to be admissible under the residual exception.[11] In briefing, it contends that K.A.B.'s statements have "circumstantial guarantees of trustworthiness" based on corroboration by the non-hearsay evidence referenced above. But as explained, the non-hearsay evidence is not particularly strong. Given this, and given the rarity with which the residual exception is intended to be used, we cannot say that rejecting the residual exception here was an erroneous exercise of discretion. Because the administrator did not erroneously exercise his discretion in excluding the hearsay testimony, we determine that his decision that good cause was not present was made according to law.

¶45    In sum, we conclude that under the certiorari standard of review, the administrator's decision must be upheld because it is supported by substantial evidence and was made according to law. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[11] Contrary to DOC's contention, neither *Simpson*, 250 Wis. 2d 214, nor *State ex rel. Harris v. Schmidt*, 69 Wis. 2d 668, 684, 230 N.W.2d 890 (1975), establishes a per se rule that sexual assault victims need not testify at revocation hearings. Good cause determinations are by nature fact specific and fact intensive. *See State v. Sorenson*, 143 Wis. 2d 226, 245–46, 421 N.W.2d 77 (1988).

ANNETTE KINGSLAND ZIEGLER, J., concurring.

¶46    I agree with the majority that the administrator's decision in this case is supported by substantial evidence. The standard we must apply on certiorari review is whether the administrator's decision is *invalid*, not whether we like it or agree with it.  *See Ottman v. Town of Primrose*, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411 ("Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, an administrative agency, or an inferior tribunal." (citing *Acevedo v. City of Kenosha*, 2011 WI App 10, ¶8, 331 Wis. 2d 218, 793 N.W.2d 500)); *AllEnergy Corp. v. Trempealeau Cnty. Env't & Land Use Comm.*, 2017 WI 52, ¶140, 375 Wis. 2d 329, 895 N.W.2d 368 (Ziegler, J., concurring) (emphasizing that certiorari review is "limited and deferential"). Although the dissent's arguments that the administrator's decision is not supported by substantial evidence[1] are not without some force, the standard we must apply requires that we review the evidence to determine whether the administrator could *reasonably* make the decision he made. *Sills v. Walworth Cnty. Land Mgmt. Comm.*, 2002 WI App 111, ¶11, 254 Wis. 2d 538, 648 N.W.2d 878. To be clear, the administrator likely could have made the opposite determination, and if the administrator had done so, we likely would have held that there is substantial evidence supporting that decision. *See id.* ("We must uphold the Committee's decision so long as it is supported by substantial evidence, even if there is also substantial evidence to support the opposite conclusion." (citing *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 568 n.4, 579 N.W.2d 668 (1998))).

¶47    I am unwilling, however, to join the majority's conclusion that the second issue in this case—whether the administrator erred by excluding hearsay testimony—is simply a question of whether the administrator acted "according to law." Majority op., ¶29. It may also be appropriate, given the petitioner's arguments, to review the issue under the third certiorari prong, which asks "whether [the administrator's] action was arbitrary, oppressive, or unreasonable and represented [his] will and not [his] judgment." *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶41, 362 Wis. 2d 290, 865 N.W.2d 162.

---

[1] The dissent argues that the administrator's decision regarding three of the allegations is not supported by substantial evidence. Those three allegations are that Sellers: (1) entered K.A.B.'s home without her consent, (2) sexually assaulting K.A.B., and (3) later trespassed on K.A.B.'s property. Dissent, ¶64.

¶48    Accordingly, I concur, but I do not join the majority opinion.

REBECCA GRASSL BRADLEY, J., dissenting.

¶49     While on probation for drug dealing, Keyo Sellers invaded K.A.B.'s home, threatened her with a large knife, and sexually assaulted her. During the assault, he told her he had been watching her for a year and had entered her house on earlier occasions while she walked her dog. After the assault, he robbed K.A.B. of thirty dollars. K.A.B. reported the assault to the police minutes after Sellers left her home, and she had a security system installed days later. One week after the assault, the security system's cameras captured a man on K.A.B.'s porch, peeping into her window. Three months later, Sellers surrendered to the Milwaukee Police Department (MPD). A sample of his DNA was taken and tested, and the DNA material taken from K.A.B.'s body by a Sexual Assault Nurse Examiner (SANE) matched Sellers' DNA.

¶50     Two weeks after Sellers turned himself in to MPD, he was charged with second-degree sexual assault/use of force and burglary. Two months later, the Department of Corrections (DOC) sought to revoke Sellers' probation because he violated his rules of supervision by breaking the law and lying to his probation agent. DOC alleged five separate violations: entering K.A.B.'s residence without her consent; sexual assault; robbing K.A.B.; trespassing at K.A.B.'s residence one week after the assault; and providing false information to his probation agent.

¶51     At the revocation hearing, DOC presented the following items of evidence, among others:

- Michelle Burns, an analyst with the Wisconsin State Crime Laboratories, testified that the DNA found on the victim's body matched Sellers' DNA sample and the DNA profile of one in every 278 African American men, which means 389 men in Milwaukee would match the profile.
- Geraldine Kellen, Sellers' probation agent, testified that she was certain the man in the video footage taken by the victim's security system was Sellers.
- Michael Walker, an officer with the Sensitive Crimes Division of MPD, testified that he gave the video footage taken by the victim's security system to the Greenfield Police Department to run it through facial recognition software. Three booking photos of Sellers matched the images taken from the video footage of the man on the victim's porch one week after the assault.

- The victim's written statement to Agent Kellen detailing the assault and the trespass.
- The video footage taken by the victim's security system.

Agent Kellen testified that DOC did not subpoena K.A.B. to testify because she was not able to identify her assailant with certainty, and Agent Kellen did not want to traumatize her.

¶52 Administrative Law Judge Martha Carlson presided over the revocation hearing and determined that DOC established each of the allegations by a preponderance of the evidence. Among other evidence, she relied on the DNA match and the lack of any "credible explanation for why Mr. Sellers' DNA would be on K.A.B. but for the assault." She also relied on the video footage showing Sellers on the victim's porch days after the sexual assault. Sellers appealed. In a brief letter, Brian Hayes, the Administrator of the Division of Hearings and Appeals, reversed the ALJ's decision, citing the inadmissibility of the victim's hearsay statements. The administrator did not consider whether non-hearsay evidence supported the alleged probation violations.

¶53 One year later, the circuit court reversed the administrator's decision, concluding "[n]on-consent . . . can be proven circumstantially based on the totality of the evidence" and the testimony of the probation agent, the crime lab analyst, and the police officer collectively established the alleged probation violations. Another year later, the court of appeals reversed the circuit court's decision, deferring to the administrator's conclusion that the victim's testimony was necessary to prove the probation violations. Three months later, a jury found Sellers guilty of second-degree sexual assault with the use of force and burglary.

¶54 The majority recites the correct standard of review but errs in applying it. The majority deems the administrator's determination "reasonable" and supported by substantial evidence. Majority op., ¶¶27–28. It isn't. Only by ignoring non-hearsay evidence supporting revocation could the administrator reasonably decide not to revoke Sellers' probation. Even without the victim's testimony, no reasonable person would decline to revoke Sellers' probation given the overwhelming evidence to support his multiple violations of the law.

¶55 The non-hearsay evidence supporting DOC's first two allegations—Sellers entering K.A.B.'s home without her consent and sexually assaulting her —is enough to reverse the administrator's

2

decision. The evidence supporting allegation four—prowling on her property a week later and looking in her windows—refutes Sellers' claim that he had never been to the victim's residence. Nevertheless, the administrator maintains that Sellers' false statement "remains the only non-hearsay account of what Sellers was actually doing." K.A.B.'s hearsay testimony, however, is not necessary to put two and two together.

¶56    DOC alleged, "[o]n or about 9/22/21 [Sellers] did trespass at K.A.B.'s residence . . . by walking onto the porch and looking through the windows, without her consent . . . in violation of ST 001 of the probation parole rules . . . ." The administrator determined that proving this allegation "require[d] K.A.B.'s account of events," ostensibly to establish "non-consent." In light of the non-hearsay evidence available, however, K.A.B.'s testimony is not necessary to conclude Sellers was present on K.A.B.'s property and peered into her windows without her consent.

¶57    The video evidence confirms he was there. After viewing the videos, three separate witnesses (Agent Kellen, Officer Walker, and Sellers' ex-wife) confirmed it was Sellers in the video. Even Sellers' sister thought the person in the video footage looked so much like him that she contacted Sellers about it. Contrary to the administrator's conclusion that K.A.B.'s testimony is the only evidence capable of establishing a lack of consent, Sellers' denial of ever having been there supports a reasonable inference that he prowled on K.A.B.'s porch in the middle of the night without her permission. K.A.B. calling the police confirms it. The overwhelming evidence of Sellers' trespass should have been enough for the administrator to affirm his revocation. Sellers' egregious crimes the week before leave no question that he is a danger to the public and should have had his probation revoked.

¶58    The full picture of what happened should be crystal clear to a reasonable factfinder, even without the victim's testimony. Law enforcement went to K.A.B.'s house in the early morning hours of September 15, 2021. After a SANE exam, DNA evidence of another person was recovered from K.A.B.'s body. Within days, surveillance cameras were installed at K.A.B.'s home. Law enforcement returned to K.A.B.'s house a week later on September 22, 2021. Surveillance footage was recovered showing a man outside the home shortly after midnight. At least two individuals familiar with Sellers identified him in the video footage. Law enforcement used facial recognition software to compare a still shot from the video recording with pictures of Sellers, which yielded similarity ratings of 98.2%, 92.7%, and 85.5%. These non-hearsay facts are

more than enough to justify revocation of Sellers' probation. Based on the non-hearsay evidence alone, confinement was necessary to protect the public from further criminal activity by him. The administrator erred in ignoring all of it and in concluding DOC failed to support its request for revocation.

¶59    The administrator seemed to render a decision under the misapprehension that direct evidence was necessary to support DOC's allegations against Sellers, declaring that "K.A.B.'s account of the events is critical to DOC's allegations." Under fundamental and longstanding law governing the admission of evidence in a criminal case, the administrator was plainly wrong. Decades ago, this court explained that circumstantial evidence commonly supports a conviction, and may be more convincing than direct evidence; this is particularly true when the victim, like K.A.B., cannot positively identify the perpetrator:

> The evidence against him is entirely circumstantial, but this is not unusual in a criminal case. Not many criminals are caught in the act like a child with his hand in the cookie jar. Circumstantial evidence may be and often is stronger and as convincing as direct evidence. . . . Circumstantial evidence has its inherent defects but human testimony, too, has its infirmities. A notion exists that all circumstantial evidence should be viewed with distrust because it can establish, at most, only a possibility of guilt. Such an opinion, based on the theory that circumstantial evidence can only be the basis for conjecture and is impotent to correctly indicate or to satisfactorily establish the facts upon which guilt must rest to the required degree of certainty, is unwarranted. It is true circumstantial evidence in many cases may be so weak as not to meet the standard of proof. But circumstantial evidence may be and often is stronger and more satisfactory than direct evidence.

*State v. Johnson*, 11 Wis. 2d 130, 134–35, 104 N.W.2d 379 (1960).

¶60    Discounting the circumstantial evidence of Sellers' probation violations based on unwarranted distrust would have been error alone, but the administrator didn't even consider it because he mistakenly thought K.A.B.'s account was necessary to establish the violations. Of

course it wasn't, particularly in light of the fact that K.A.B. could not identify Sellers as the man who assaulted and robbed her. A de novo review of the evidence presented to the ALJ must encompass *all* of the evidence, and a proper review of the evidence leads inexorably to a determination that DOC proved its allegations, which justify revoking Sellers' probation. Upholding the administrator's error-laden review rewards the rapist who wears a mask, thereby preventing the victim from identifying her attacker.

¶61    Unlike the administrator, the majority discusses both the DNA evidence as well as the video footage, but examines the evidence piecemeal rather than collectively. For example, the majority discounts the DNA evidence, declaring it "far from airtight" and dismisses the ALJ's finding that Sellers' DNA was in fact on the victim as a "logical leap." Majority op., ¶25. The majority projects its own lapse in logic on the ALJ. It is patently unreasonable to believe that another man assaulted K.A.B., and Sellers' intrusion on K.A.B.'s property days later was simply a coincidence.

¶62    The majority goes on to claim, "[r]easonable minds could weigh this [DNA] evidence less heavily, *as the administrator did*." *Id.* (emphasis added). The majority is mistaken. The administrator didn't even mention the DNA evidence, which means he didn't weigh it at all. Maybe the majority relies on the administrator's blanket statement that his decision "represents a de novo review of the evidence presented before the Administrative Law Judge" but that is grossly insufficient to conclude the administrator "weighed" evidence that goes unmentioned in his written decision.

¶63    Uncontroverted, non-hearsay evidence places Sellers on K.A.B.'s porch one week after she was sexually assaulted, but the majority posits it is somehow reasonable to pin the assault on one of "almost 400 other men in Milwaukee [with a DNA profile consistent with Mr. Sellers]" instead of Sellers. *See* majority op., ¶¶9, 25. The majority peddles incredible conjectures in its mission to declare the administrator's determination reasonable, but in reaching for reasons to defend an insupportable decision, the majority teeters toward absurdity. While it is possible a different person sexually assaulted K.A.B., all of the evidence points to the same man who was caught on camera peeping into her home a week later. A reasonable person would reject the possibility of another person matching Sellers' DNA profile assaulting K.A.B. the week before Sellers trespassed on her property.

¶64    No reasonable factfinder could conclude DOC failed to show by a preponderance of the evidence that Sellers trespassed on K.A.B.'s property. Video evidence corroborated by multiple individuals familiar with Sellers' appearance and posture identified him in the video. Considering his presence at the victim's home a week after the sexual assault puts the evidence of the assault in its proper context. No reasonable factfinder could conclude DOC failed to prove Sellers invaded the victim's home, sexually assaulted her, and one week later trespassed on her property. The administrator's decision to the contrary was not supported by substantial evidence. The majority errs in upholding it.

¶65    Why the court granted DOC's petition for review is unclear. The petition did not raise any novel issues of law. In addressing the issues, the majority contributes nothing to the jurisprudence governing revocation proceedings. Instead, the majority conducts the same flawed analysis as the court of appeals, relies upon the same well-established cases the court of appeals applied, and reaches the same conclusion by also deferring to the administrator's legally deficient decision. The court of appeals issued an unpublished, non-precedential, per curiam opinion. There was no point in taking this case only to repeat the errant work of the court of appeals. In the end, nothing about this case warranted this court's review. *See* WIS. STAT. § 809.62(1r) (listing the criteria for granting review). The court should have dismissed the petition as improvidently granted. By issuing a decision, the majority casts a façade of importance over its analysis, despite the opinion signifying nothing. I dissent.